**BLEAKLEY PLATT & SCHMIDT, LLP**
**STEPHEN J. BROWN (sbrown@bpslaw.com)**
**SUSAN E. GALVÃO  (sgalvao@bpslaw.com)**
**LINO J. SCIARRETTA (lsciarretta@bpslaw.com)**
*Attorneys for Plaintiff*
**One North Lexington Avenue**
**White Plains, New York 10601**
**Tel.: (914) 949-2700**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
------------------------------------------------------------------------X

CHARLES L. ADLER, GRANT ADLER,
and C. M. ADLER, LLC,

                              Plaintiffs,                    Case No:

              - against-

GRUMA CORPORATION, D/B/A MISSION
FOODS, GUERRERO MEXICAN FOOD
PRODUCTS, ETC.

                              Defendants.

------------------------------------------------------------------------X

## COMPLAINT

        Plaintiffs, by and through their attorneys, Bleakley Platt & Schmidt, LLP, as and for their

Complaint against the defendant, Gruma Corporation, d/b/a Mission Foods, Guerrero Mexican

Food Products, etc. ("Gruma" or "defendant"), specifically allege and state as follows:

## INTRODUCTION

        1.      This action is brought by and on behalf of the above-named plaintiffs Charles L.

Adler, Grant Adler and Charles L. Adler's solely owned company, C. M. Adler, LLC

(collectively herein "plaintiffs") – a franchisee and distributor of Gruma Corporation food

products to various large and small retail and corporate accounts within an assigned territorial

region in New Jersey – as against food and distributor giant Gruma, following Gruma's

improperly motivated and wrongful termination of plaintiff in June 2022.

2.      As described more fully in the pages that follow, Gruma is the world's largest

tortilla maker and supplies and distributes tortillas and other food products under the Mission

Foods brand (and other brands) throughout the United States of America, including but not

limited to New Jersey.  According to Gruma's website, Mission Foods is "the world wide leader

in tortillas and an important producer of flatbreads such as wraps, naan and pita, among others,

as well as tortilla chips and Tex-Mex products, such as dinner kits and taco shells."  *See*

https://www.gruma.com/en/our-brands/locate-a-brand/mission.aspx  (accessed October 4, 2022).

3.      Gruma products include such well known lines as Mission Corn and Flour

Tortillas, Mission Flatbread, Mission Naan, Mission Salsa Dip, and many others.

4.      Gruma's business model and long-term success depend upon the wide distribution

and sale of its products and brands to thousands of retail and corporate accounts in and about the

United States, and more particularly, New Jersey.  To that end, Gruma dictates and controls

virtually every detail and aspect of plaintiffs' day-to-day services and operations, scrutinizing

and overseeing plaintiffs' work at every level of the distribution process, from training, sales,

marketing, pricing, and delivery, to the stocking of shelves and product placement at each Gruma

account.

5.      To avoid employment-related costs, expenses and liabilities for its workers and

distributors (such as overtime pay, benefits, FICA and Social Security contributions, workers'

compensation insurance, and unemployment benefits and costs, to name a few only), Gruma uses

what is purportedly an independent distributor model, by way of a "Store Door Distribution Agreement" or "SDDA" between Gruma and its distributors, including the Plaintiffs (a copy of the SDDA between C.M. Adler, LLC and Gruma Corporation dated March 7, 2014 is annexed hereto as Exhibit "A").

6.      Although not expressly stated in the parties' respective SDDA, the relationship established between Adler and Gruma is unquestionably that of a franchisor-franchisee under New Jersey law, and more specifically, the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.J. 56:10-1, et seq.

7.      The NJFPA was enacted with the general objective of "protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors who violate the Act." *Kubis & Perszyk Assocs. v. Sun Microsystems*, 146 N.J. 176, 193, 680 A.2d 618 (1996). Pursuant to this purpose, the NJFPA provides that "[i]t shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause." N.J.S.A. 56:10-5. In addition, the NJFPA prohibits the imposition of "unreasonable standards of performance upon a franchisee." N.J.S.A. 56:10-7(e).

8.      Among other things, the NJFPA provides certain protections and rights to franchisees and is designed to prevent franchisees, like the plaintiffs, who generally have very limited bargaining power with a large conglomerate such as Gruma, from improper and unilateral termination of their agreements, jobs and livelihoods in which they have invested so much of their lives and savings.

9.      In addition, the level of control and direction that Gruma exerted over the plaintiffs' work, both under contract and in fact, and the services the plaintiffs performed were a material part of and inextricably related to Gruma's day-to-day business, and the fact that the

3

plaintiffs were not engaged in an independently established business, all hold that plaintiffs were in fact employees of Gruma, as well as franchisees.

10.     Plaintiffs' claims in this action principally arise from, and seek redress for, Gruma's intentional and retaliatory termination in June 2022, which was purportedly a "termination without cause", in violation of the NJFPA.  Plaintiffs also seek relief for defendants' other unlawful, heavy-handed, and oppressive policies and practices in violation of plaintiffs' statutory and common law rights – which policies and practices have severely and unconscionably undermined and obstructed plaintiffs' ability to earn a fair wage and support their families, despite their generating hundreds of thousands of dollars in profits for Gruma and its management team along the way.

11.     Specifically, plaintiffs were part of a group of other Gruma distributors who actively and demonstrably engaged in "protected activity" under the Fair Labor Standards Act and state law and began to organize, obtain legal representation and complain to Gruma and its representatives regarding unfair work terms, pay, conditions and other unfair treatment and conduct by Gruma in violation of their rights as employees and/or franchisees of Gruma.  As soon as the defendant Gruma became aware of these complaints and efforts and protected activity, Gruma immediately and wrongfully terminated the leaders of this effort within the company and terminated plaintiffs and several other members of the collective actors.   These retaliatory and punitive actions by Gruma were taken to chill and have a cooling effect upon the protected activity that plaintiffs and the collective others were engaging in within the company, and were expressly designed to punish (and did punish) the workers and distributors that sought to advance the protections and rights afforded workers under both federal and state law.

12.     Plaintiffs seek, *inter alia,* to be recognized and restored as a franchisee and distributor of Gruma, with all of the attendant rights and privileges under applicable federal and state law, to enjoin Gruma's unlawful practices going forward, and to recover from Gruma all appropriate compensatory damages, lost wages, unlawful deductions and charges against earnings, as well as statutory liquidated and multiplied damages, for defendants' past and ongoing unlawful acts and omissions, including but not limited to acts of unlawful retaliation.

13.     In addition, plaintiffs seek to recover statutory and other damages arising from the unlawful and retaliatory actions undertaken by defendants, as against the plaintiffs, in response to and retribution for plaintiffs' individual and collective efforts to assert their rights and object to Gruma's unlawful employment practices.  Finally, plaintiffs also seek the costs and expenses of this action, including their attorneys' fees, consistent with their statutory rights under federal and state law.

## JURISDICTION AND VENUE

14.     As detailed below, plaintiffs seek monetary damages and declaratory and injunctive relief pursuant to, *inter alia,* the New Jersey Franchise Practices Act ("NJFPA") N.J.S.J. 56:10-1 *et seq.*, the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201, *et seq.*) and more specifically, 29 U.S.C. 215(a)(3) ("Anti-Retaliation Provision"); the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"); the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, et seq.; the New Jersey Conscientious Employee Protection Act, N.J. Stat. § 34:19-1 (CEPA); and the Declaratory Judgment Act (28 U.S.C. § 2201).  Plaintiffs also seek relief pursuant to the common law of the State of New Jersey, including damages for unjust enrichment, rescission, and related relief for damages caused by Gruma's illegal conduct.

15.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (the provisions of the general jurisdictional statute for "civil actions arising under the ... laws ... of the United States") and the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as under 28 U.S.C. § 1332, as the parties have diversity of citizenship and the amount in controversy exceeds $75,000.  This Court also has supplemental jurisdiction over the state claims arising pursuant to the statutory and common law of the State of New Jersey, pursuant to 28 U.S.C. § 1367.

16.    Venue lies in the District of New Jersey (Trenton) pursuant to 28 U.S.C. § 1391(b) and (d).  Defendant Gruma maintains its principal place of business within the State of Texas, and it conducts substantial business within this judicial district.  In addition, a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district.

17.    This action is properly brought in this Court and not in arbitration, although the parties' SDDA purports to contain an arbitration provision, because the arbitration provision in the SDDA is not effective and therefore not binding pursuant to the laws of the State of New Jersey.

## THE FACTS SUPPORTING RELIEF

A.      **Defendant Gruma Corp.**

18.      Defendant Gruma Corp. is an international business, incorporated and organized under the laws of the State of Nevada, with a principal place of business in the United States, located at 5601 Executive Dr #800, Irving, Texas 75038.  Gruma does business as "Gruma" and "Mission Foods" within the State of New Jersey and is a "franchisor" within the meaning of the NJFPA (N.J.S.A., 56:10-5 et seq.), as well as an "employer" and "person" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NJWHL (NJSA § 34:11-56a1 *et seq*.), NJWPL and CEPA.

19.      As noted above, Gruma supplies and distributes popular and highly recognizable food products throughout the United States including the State of New Jersey.

20.      In implementing Gruma's business model, expanding its wide distribution chain, improving its profitability and bottom line, and ultimately enriching its owners and management team over the years, Gruma has relied heavily on the plaintiffs and other distributors like them, who market, service and deliver Gruma products to the vast majority of Gruma's store accounts in the New Jersey market and beyond.  In short, Gruma's market was built squarely on the backs of the plaintiffs – who are designated as so-called "independent contractors" under the parties' SDDA.

21.      In so doing,  Gruma has misclassified plaintiffs as "independent contractors," rather than "employees."  And, as such, Gruma has knowingly and intentionally deprived plaintiffs of all the benefits, privileges and protections available to employees.  In so doing, defendant has also wrongfully disregarded and carefully avoided meeting their statutory and

common law duties, as "employers," to plaintiffs, as "employees," including statutory wage and hour provisions, record-keeping requirements, employment taxes, workers compensation insurance, etc.

22.     As a further result of this intentional misclassification, plaintiffs have been improperly saddled by Gruma with the significant costs and expenses of conducting Gruma's business and servicing the Gruma accounts in the assigned territory – including but not limited to paying for tolls; purchasing appropriate, company approved attire to service the Gruma accounts; bearing the expenses of stale, broken, defective and/or expired product; paying security fees; absorbing the cost of marketing efforts; leasing sophisticated handheld devices, data plans, and software required by the company; bearing the costs and expenses associated with the maintenance and operation of the delivery trucks; and many other expenses that have been improperly charged to plaintiffs by Gruma – notwithstanding that these expenses are incurred solely for Gruma's benefit, in the furtherance of its business model and its multi-million dollar commercial enterprise.

23.     All the while – and as more fully detailed in the pages that follow – Gruma has exercised a high degree of control and oversight of plaintiffs' activities, such that the use of the term "independent contractors" in the SDDA is absolutely meaningless and not representative of the actual relationship between the parties.  In fact, the reality is just the opposite.  Defendant oversees and dictates virtually every aspect of the plaintiffs' working lives, down to the tiniest detail, from the Gruma Facilities and warehouse in 475 Division St., Elizabeth, New Jersey, 07201, to the store shelves at the Gruma accounts, and at every step in between.  Quite simply, plaintiffs are defendant's employees.

24.     In or around 2016, plaintiffs leased a new company-approved warehouse at 825 Brook Road, Lakewood, New Jersey 08701, and Gruma delivered truckloads of product and plaintiffs operated and ran the route from this new facility.  This warehouse was the location for the meeting with counsel in May 2022, discussed further herein.

**B.**     **The Plaintiffs**

25.     Plaintiff Charles L. Adler is an individual over the age of 18 and a resident of New Jersey.  Mr. Adler worked full-time as a Gruma franchisee and employee from March 2014 until he was wrongfully terminated on June 12, 2022.  Mr. Adler personally serviced Gruma accounts under the name C.M. Adler LLC.  Mr. Adler signed a Store Door Distributor Agreement dated March 7, 2014 with Gruma.  Over the course of his employment with Gruma, Mr. Adler regularly worked full-time for Gruma fifty-five (55) hours per week – ten (10) hours per weekday and five (5) hours on the weekend – fifty (50) weeks a year.

26.     Plaintiff Grant Adler is an individual over the age of 18  and a resident of New Jersey.  Grant Adler is Charles L. Adler's son.  Mr. Adler worked full-time as a Gruma franchisee and employee from January 2016 until he was wrongfully terminated on June 12, 2022.  Over the course of his employment with Gruma, Mr. Adler regularly worked full-time for Gruma forty (40) hours per week – fifty (50) weeks a year.

27.     At all relevant times, each of the above-named plaintiffs was or is a "franchisee" of Gruma.  Specifically, the SDDA expressly grants plaintiffs a license to use, market and sell defendant Gruma's products, brands and tradenames.  The SDDA required that the plaintiffs maintain a place of business in New Jersey.  Gross sales of the shared product or service between defendant franchisor and plaintiffs-franchisee exceeded $35,000 per year and more than 20% of the plaintiffs-franchisee's gross sales were derived, or intended to be derived, from the relationship with Gruma, and a "community of interest" exists between the Gruma and the plaintiffs.

28.     In addition, at all relevant times, each of the above-named plaintiffs was or is an "employee" of Gruma within the meaning and definition of that term as provided in federal and

state law.  Each of the above-named plaintiffs services and distributes Gruma products to Gruma retail and corporate accounts located within the State of New Jersey, and each worked full-time (no less than forty hours per week and, as described above, substantially more than that for Charles Adler) for defendant.

29.     None of the above-named plaintiffs could properly be described as exempt, nor does defendant encourage or permit plaintiffs to act upon or otherwise exercise independent judgment in the performance of their duties.

30.     Plaintiffs have each been improperly misclassified by defendant as "independent contractors" and, as such, each plaintiff has been systematically denied the minimum rights, benefits, and privileges afforded to employees pursuant to federal and state law, including but not limited to payment of a minimum or regular wage and overtime wages.

31.     Each of the above-named plaintiffs has also been subjected to improper and illegal deductions from wages and/or illegal deductions by separate transactions, and otherwise has been improperly forced by defendants to bear the costs and expenses of performing their duties as employees of Gruma in violation of applicable wage and hour, overtime, and anti-kickback provisions under the Fair Labor Standards Act and New Jersey Law.

32.     Thus, for example, defendants have forced plaintiffs to bear, and failed and refused to reimburse plaintiffs for, the following costs and expenses – all of which are incurred in furtherance of Gruma's business operations and at the direction of defendants, and not for the benefit of the individual plaintiffs:

  a.     costs relating to the lease or purchase and operation of vehicles required to perform work for Gruma, including the costs necessary to maintain, repair, and clean such vehicles;

b.      costs relating to the purchase of insurance, including vehicle insurance, workers' compensation, and work accident insurance;

c.      charges for spoilage, damaged or expired food products;

d.      costs relating to the purchase of work attire adhering to Gruma's specifications;

e.      costs of hiring drivers and helpers and in some case merchandisers to facilitate distribution, delivery, and packing out and stocking customer shelves;

f.      the share of federal employment taxes for which employers are otherwise liable; and

g.      other costs normally associated with the operation of a business and included in Gruma's business, such as maps, logos and signs, electronic devices, handheld devices, printers, software, hardware, data plans, etc.

33.     All of the above constitute unlawful deductions from wages, or deductions by separate transactions, and/or illegal kickbacks mandated as a condition of employment – in blatant violation of federal and state labor and employment laws.

## C.      The SDDA and the Realities of the Franchisor-Franchisee Relationship between Defendant and Plaintiffs

34.     As a condition of obtaining employment, plaintiff Charles L. Adler was required by defendant to form and/or use an existing single purpose legal entity and to enter into a lengthy form contract entitled a "Store Door Distributor Agreement".

35.     As a condition of employment, plaintiffs were also required by Gruma to "purchase" a distributorship route, comprised of Gruma retail accounts in and around New Jersey – and more specifically in this case, in the county of Mercer, New Jersey.

36.     Although not identified as such, the reality of this relationship under established New Jersey law was that of franchisor (defendant) and franchisee (plaintiffs).

37.     Upon the "purchase" of a route, defendant purportedly gave to plaintiff CM Adler LLC the "exclusive" right and privilege to service particular Gruma customer accounts, within a defined area of Mercer, New Jersey, contingent upon plaintiffs' payment of the purchase price and their strict compliance with such terms and conditions of performance as are dictated by Gruma, alone.  Those detailed terms and conditions are set forth in the Store Door Distributor Agreement and are enforced by Gruma and its representatives and employees.

38.     Notably, the SDDA provided plaintiffs with a license to use defendant's "Marks" or trademarks and brand names, as well as to sell defendant's products and to use other proprietary rights of the defendant as set forth in the SDDA.  SDDA Sections 1(k), (m), (n), *etc*.

39.     The SDDA also required that the plaintiffs "shall keep and maintain adequate warehouse facilities for any inventories of Products Distributor may have on hand from time to time" and directed that the warehouse be maintained "in clean and sanitary conditions and in full compliance with all applicable health, safety and other laws or regulations."  SDDA Section 8(c).

40.     The gross sales of the products between defendant and plaintiffs exceeded $35,000 each year.

41.     More than 20% of the plaintiff-franchisee's gross sales were derived or intended to be derived from the relationship.  Indeed, 100% of the plaintiffs' gross sales were in fact derived from the relationship.

42.     A "community of interest" exists between the franchisor and franchisee.

43.     The SDDA purports to define the relationship between Gruma and plaintiffs as being a relationship between a "supplier" and an "independent contractor."   Yet, nothing could

be further from the truth.  The economic and practical reality is that plaintiffs are not

"independent contractors" at all.  Their daily work is performed under the constant supervision,

control, and strict scrutiny of Gruma and its management team.

44.     The relationship between defendant Gruma and the plaintiffs is that of a

franchisor-franchisee under New Jersey law and the plaintiffs are entitled to the rights and

protections afforded franchisees under the NJFPA and other applicable laws.

**D.     The SDDA Agreement and the Realities of the Employer-Employee Relationship
Between Defendants and Plaintiffs**

45.     In addition to the fact that the relationship between defendant and plaintiffs is that

of franchisor-franchisee, the relationship is also simultaneously that of employer-employee.

46.     Under New Jersey law, plaintiffs Charles Adler and Grant Adler work for and are

employees of defendant, Gruma, and therefore are entitled to the rights, privileges and

protections afforded employees under both Federal and State law.

47.     Pursuant to New Jersey labor law, all workers are presumed to be employees

unless and until all elements of the "*ABC test*" are found in the affirmative.  Under the realities

of the relationship between these parties, plaintiffs Charles Adler and Grant Adler are employees

of Gruma based upon their job requirements and obligations and the level of control that Gruma

exerts over their route and the exclusive nature of the plaintiffs' business – which is to market,

sell, and deliver Gruma products to Gruma accounts.

48.     The SDDA requires that the individual plaintiffs devote their best efforts to

distribute defendant's Products to so-called "Eligible Customers" that are assigned to plaintiffs

by the defendant within the "Territory".  The SDDA expressly restricts the plaintiffs from selling

or distributing defendant's Products to any other persons or by any other method other than the

SDDA (i.e., plaintiffs cannot open their own store, operate a route outside the Territory, or sell to persons other than assigned Eligible Customers).

49.    Further, the SDDA contains a non-compete provision which precludes the plaintiffs from marketing, promoting, soliciting, selling or distributing any products that are competitive to the defendant's Products.  *See* SDDA ¶ 7(c).

50.    The SDDA places no similar restriction on the defendant (nor provide any protection for the plaintiffs). Specifically, the SDDA states that the defendant "may, however, either directly or through one or more distributors, jobbers, or representatives appointed by it, distribute products similar to or competitive with the Products (including, without limitation, tortillas, tortilla chips, or other food products bearing trademarks other than the Marks, as well as Food Service or Refrigerated products bearing the Marks) to Eligible Customers or distribute the Products to Eligible Customers through any means other than Store Door distribution." *See* SDDA ¶ 2(a).

51.    Although plaintiffs paid a heavy price for the "privilege" of servicing the defendant's customers and accounts (i.e, by purchasing the route), Gruma reserves to itself in the SDDA the virtually unfettered "right" to "buy-back" the route and/or terminate the relationship at any time, for any number of reasons (or no reason at all).

52.    In addition to the requirement that plaintiffs service the Gruma customers and accounts to Gruma's satisfaction, the SDDA mandates that the plaintiffs purchase and supply their own delivery trucks, insurance, and requires that the plaintiffs use exclusively the defendant's hand-held devices for all aspects of purchasing, invoicing and selling the Products. *See* SDDA ¶ 7, *etc.*  The plaintiffs are responsible for the costs for all of these items, including the mandated hand-held devices and technology.

53.     Plaintiffs also have no control or discretion in terms of what prices they may charge for the Products.  Specifically, the purchase price for all Products is set by Gruma and the hand-held devices (which the plaintiffs are required to use) sets all pricing for all Products.  The plaintiffs earn a so-called "margin" for all Products sold to the Gruma accounts, however, that margin is also established and amended from time to time by Gruma, at Gruma's sole discretion.

54.     Gruma also requires that the distributor provide a "security deposit" at the time of the purchase of the route.

55.     In structuring their business operations as they have, defendant has unfairly burdened plaintiffs with substantial costs and expenses of doing business, which properly ought to be borne by Gruma.  In short, plaintiffs have been forced to pay a high price for the illusory "privilege" of distributing Gruma products to Gruma accounts, upon such pricing terms and other heavy-handed conditions as are unilaterally dictated (and from time to time amended) by Gruma, at its sole discretion.

**E.     The Misclassification of Plaintiffs as "Independent Contractors" – and the Many Indicia of the True Employer-Employee Relationship**

56.     As noted above, the adhesive SDDA – and the corresponding "purchase" of distributorship routes – was intentionally drafted and designed by Gruma to mask, conceal, and subvert the true nature of the relationship between defendant and the plaintiff distributors – i.e., a relationship of employer and employee.

57.     Although the SDDA contains various statements and language purporting to classify plaintiffs as "independent contractors," this classification fails to account for the true economic realities of the relationship.

58.     The following facts are indicative of the true nature of the employer-employee relationship, under federal and state law:

a.    The work of the plaintiffs in selling and distributing Gruma products to retail accounts in New Jersey is completely integrated into, and essential to, the business of Gruma, such that Gruma's success depends significantly on plaintiffs' performance of services and distribution of product;

b.    Gruma requires the plaintiffs, in the performance of their duties, to adhere to Gruma's policies and procedures, as set forth in SDDA, and pricing as set forth in the mandated hand-held devices;

c.    Defendant reserves the right to and has in fact imposed heavy financial penalties and/or disciplinary actions upon plaintiffs for their perceived failure to comply with such policies, procedures, and directives;

d.    Plaintiffs' services are performed under Gruma's direct substantial supervision and control, which is exercised on a regular basis, down to the most minute details of the plaintiffs' services;

e.    Defendant retains to itself, *inter alia,* the exclusive rights to approve or disapprove any vehicle and warehouse used by plaintiffs to distribute products to the accounts on their routes, and to inspect plaintiffs' warehouse, vehicles and helpers for compliance with company-promulgated signage and appearance standards;

f.    Plaintiffs are required to use handheld devices, tablets, and software leased to them by Gruma, upon lease terms that are demanded by Gruma – which devices allow Gruma to keep track of all sales, deliveries and other transactions;

g.     Plaintiffs are required to use the company-provided handheld tablet to place all product orders and to generate invoices to the accounts using company-dictated pricing – and defendants can and do monitor and penalize plaintiffs if they do not adhere to company-pricing or other electronic invoicing requirements;

h.     The plaintiffs bear the risk and loss for all product that goes "stale" or is "unsaleable" at the Gruma accounts.  In other words, if a product does not sell and expires on the customer's shelf, the plaintiffs must replace that product with fresh product at their cost and expense.  *See* SDDA ¶ 8(b).

i.     Plaintiffs can only provide products and services to those accounts approved by Gruma and only in the particular service area approved by Gruma;

j.     Plaintiffs are directed to communicate all aspects of their transactions with the customer accounts directly to Gruma, at the times and in the manner dictated by Gruma;

k.     Gruma controls the amount of money that plaintiffs can earn as a result of their services:  Plaintiffs are permitted to charge only the prices fixed by defendant for the products that they provide to their accounts, and are expected to offer the deals and promotions exactly as dictated by Gruma. Gruma will regularly offer sales prices to customers – and the plaintiffs have no discretion in these sales prices.  Plaintiffs make less money for these discounted sales – sales that were made by Gruma.  Defendant does not permit plaintiffs the discretion to charge higher prices, even if the market would bear those prices.  Consequently, while plaintiffs are forced to operate on thin

margins, defendant is able to turn a profit on every case sold, and move more and more product into the market by capping the prices plaintiffs can charge the retail accounts;

l.      Plaintiffs may not offer to sell to their customer accounts the products or services of any other companies or suppliers, whether or not such products "compete" with Gruma products for shelf space;

m.     Defendant determines what products the plaintiffs may offer to their accounts and when and how they should be promoted;

n.      Defendant regularly sends Gruma area service managers and other employees out to the plaintiffs' accounts to meet with the customers to gauge the level of plaintiffs' service and market products;

o.      Defendant has the power to put in and take any product line out of distribution at any time, without notice or corresponding compensation to plaintiffs – this, too, can and does dramatically (and negatively) impact the amount of money that plaintiffs can earn as a result of their services, as some products are more in demand than others;

p.      Although the SDDA purports to give plaintiffs proprietary control over their routes and account lists, defendant reserves the right to and does change the plaintiffs' routes from time to time without notice or compensation to plaintiffs; yet, defendant flatly prohibits plaintiffs from selling their routes or having other individuals perform in their place without the express prior approval of Gruma;

q.    Defendant retains the right to terminate plaintiffs' services upon notice or whenever the company unilaterally determines that any provision of the SDDA has been "violated" or for no reason at all, amounting to the right to terminate at will;

r.    Defendant can require plaintiffs to make deliveries and to perform service at the times and days requested by customers and/or demanded by Gruma; and

s.    Defendant requires purchase of minimum insurance, completion of specified paperwork, and compliance with many other rules and specifications determined by Gruma, in "its sole discretion".

59.    The true economic reality and status of plaintiffs as current or former employees of Gruma is amply demonstrated by these stringent, detailed, and comprehensive requirements that defendant has consistently imposed on the plaintiffs, in the conduct of plaintiffs' day-to-day work for the company, throughout the period of their respective employment.

60.    Plaintiffs unquestionably perform functions that are an essential and significant part of Gruma's normal business operations, and they do so under the direct supervision and control of the defendant.   Despite this, plaintiffs have been arbitrarily and illegally misclassified as "independent contractors" and denied access to the wages, benefits, and other privileges that Gruma provides to other employees and that is mandated by both Federal and State law.

**F.    Defendant Has Unlawfully Retaliated Against Plaintiffs in Response to Plaintiffs' Exercise of Rights and Other Protected Activities**

61.    In or about early May 2022, plaintiff Charles Adler and several other distributors of Gruma began to speak with one another about Gruma's heavy-handed tactics including, among other things, Gruma's unilateral announcement that it was going to be lowering the distributor's margins on products.  Mr. Adler, together with several of the other distributors (who

are not party to this lawsuit but were likewise retaliated against by Gruma), circulated one or more emails regarding an effort to consult with and have a meeting with counsel to discuss the distributors' rights, as related to Gruma and its actions, including but not limited to what rights the distributors had under the SDDA and applicable law.

62.     A meeting with legal counsel was scheduled to take place on or about May 9, 2022, at the plaintiffs' warehouse in Lakeview, New Jersey, for the express purpose of investigating rights and claims against Gruma, including but not limited to rights under Federal and State labor and employment laws.

63.     The plaintiffs shared this warehouse space with another Gruma distributor.

64.     Several confidential email communications were distributed to and among a host of Gruma distributors (including plaintiffs and others) announcing this meeting and in an effort to get the distributors to band together and attend the meeting with legal counsel to learn about their rights and explore options going forward.

65.     Unfortunately, one or more of these confidential and attorney-client privileged communications were sent or disclosed to employees and representatives of Gruma inadvertently and/or without the knowledge or intent of the senders.

66.     The efforts by these distributors to consult with, obtain legal advice and to engage counsel to address the heavy-handed and unlawful conduct by Gruma constituted *protected activity* under applicable Federal and State law.

67.     Immediately upon the *leak* of the meeting, Gruma terminated the "leaders" of this group of distributors who had engaged in protected activity by sending termination letters dated May 9, 2022. The termination letters, one of which was received by the plaintiffs to this action,

stated that Gruma had elected to terminate the SDDA "without cause" pursuant to Subsection 10(b).

68.     These terminations were unlawful and retaliatory.  Gruma terminated the so-called troublemaker distributors in an effort to punish those who dared to seek counsel and lead the effort to complain about Gruma's improper and heavy-handed conduct and treatment.

69.     These actions by Gruma were designed to (and did) have a chilling effect upon the lawful, protected conduct of the employees/franchisees and was further intended to (and did) punish the leaders of this group, in order to set an example for the other employees / franchisees that might look to join in taking legal steps to enforce their rights and privileges under the law against Gruma.

70.     Specifically, plaintiffs consulted with legal counsel regarding potential claims and legal remedies arising from Gruma's unlawful and heavy-handed treatment and misclassification of the plaintiffs as independent contractors.

71.     Upon information and belief, defendant was specifically informed of or otherwise became aware of the fact that the plaintiffs intended to and then did consult with legal counsel in or around early May 2022, if not earlier.

72.     A copy of the May 9, 2022, termination letter from Gruma to CM Adler LLC is annexed hereto as Exhibit "B".

73.     In addition, several other termination letters were provided to no less than four (4) other distributors who were involved in engaging counsel to represent them in connection with their employment and work with Gruma.

74.     The implicit (if not explicit) intimidating and threatening message in such terminations was that there would be severe repercussions for any such involvement, and that the

plaintiffs and other distributors should refrain from proceeding or risk losing their livelihoods and their substantial investments of time, money, and hard work.  These communications were plainly designed to "root out" the perceived rabble-rouser and to have a chilling effect on the plaintiffs' lawful conduct and activity in protection of their own rights.

75.     Thereafter, defendant also took immediate and swift action to punish and retaliate against those individuals whom they perceived, or knew, to be the "lead" plaintiffs.

**G.  Defendant Failed to Keep Records as Required by Law**

76.     At all relevant times, defendant willfully failed to make, keep, maintain and preserve accurate contemporaneous records with respect to plaintiffs, sufficient to determine their proper wages, hours worked, entitlement to overtime pay, benefits, and other conditions and terms of their employment, as they required to do by New Jersey law.

77.     At all relevant times, defendant acted willfully in failing to maintain and keep such records and in failing to pay plaintiffs minimum wages and overtime wages.

78.     Defendants' failure to accurately make, keep, maintain, and preserve such records with respect to plaintiffs is prejudicial to plaintiffs and in violation of New Jersey law.

**PLAINTIFFS' CLAIMS AGAINST DEFENDANT**

**COUNT I**

**FAILURE TO PAY MINIMUM OR ANY WAGES IN VIOLATION OF THE FAIR
LABOR STANDARDS ACT (29 U.S.C. § 201, *ET SEQ.*)**

79.     Plaintiffs hereby incorporate by reference paragraphs 1 through 78 above as if more fully set forth herein and state the following claim for relief on behalf of plaintiffs Charles Adler and Grant Adler as against defendant Gruma.

80.     At all relevant times, upon information and belief, defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce

within the meaning of the FLSA, 29 U.S.C. §§ 203(d), 206(a) and 207(a). Further, plaintiffs Charles Adler and Grant Adler are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 203(e), 203(g), 206(a) and 207(a).

81.     Upon information and belief, at least within each of the three (3) most recent years relevant to the allegations herein, Gruma had gross revenues well in excess of $500,000.

82.     Defendant was an enterprise engaged in commerce within the meaning of the FLSA for all relevant periods herein and the plaintiffs were employed by the defendant.

83.     Defendant knowingly, willfully and intentionally failed to compensate plaintiffs at the applicable minimum hourly wage or indeed any wage, in violation of the FLSA, *see e.g.,* 29 U.S.C. §206(a).

84.     Defendant also willfully required plaintiffs to pay for equipment, product, fees, technology, and other business expenses and costs that were incurred for the benefit of the defendant and the Gruma enterprise directly.  These charges and expenses reduced the plaintiffs' minimal earnings from products sales to below the minimum hourly wage, in violation of the FLSA, 29 U.S.C. §206(a) and applicable regulations, including 29 U.S.C. § 531.35.

85.     Defendant failed to pay plaintiffs Charles Adler and Grant Adler wages in violation of FLSA.

86.     Defendant knowingly and willfully disregarded the provisions of the FLSA, as evidenced by their failure to compensate plaintiffs at the statutory minimum wage, or otherwise, when they knew or should have known such wages were due and that non-payment of wages would financially injure plaintiffs.  Defendant's unlawful conduct stated herein was not in good faith, and defendant lacked reasonable grounds for believing that its acts or omissions were consistent with the FLSA.  *See* 29 U.S.C. §§ 216(b), 255(a), 260.

87.    Defendant failed to properly record, report, credit and/or compensate its employees, including plaintiffs, for their hours worked and services rendered, as they were obligated to do.  29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 211(c) and 215(a).

88.    Defendant also failed to properly disclose or apprise plaintiffs of their rights under the FLSA.

89.    As a direct and proximate result of defendant's violation of the FLSA, plaintiffs Charles Adler and Grant Adler are entitled to payment of wages for all hours worked, plus liquidated damages pursuant to the FLSA.

90.    Due to the reckless, willful and unlawful acts of the defendants, these plaintiffs suffered damages in an amount not presently ascertainable in the form of unpaid wages, and are entitled to recover from defendants such wages, plus an equal amount as liquidated damages, pursuant to 29 U.S.C. §§ 206, 207, and 216(b).

91.    Plaintiffs Charles Adler and Grant Adler are also entitled to an award of their reasonable attorneys' fees, costs and expenses, including pre-judgment interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

## <u>COUNT II</u>

**FAILURE TO PAY OVERTIME
IN VIOLATION OF THE FAIR LABOR STANDARDS ACT
(29 U.S.C. § 201, *ET SEQ.*)**

92.    Plaintiffs hereby incorporate by reference paragraphs 1 through 91 above as if more fully set forth herein and state the following claim for relief on behalf of plaintiff Charles Adler as against defendant Gruma.

93.    Defendant knowingly, willfully and intentionally failed to compensate plaintiff Charles Adler for overtime wages, in violation of the FLSA.

94.     Plaintiff Charles Adler is entitled to be paid at the rate of time and one-half of the "regular" rate for all hours worked in excess of forty (40) per week, as provided for in the FLSA, *see e.g.,* 29 U.S.C. § 207.  Such calculation can and should be made by reference to the hourly wages paid to Gruma's other similarly situated employees and/or by reference to the regular rate of wages prevailing in the industry for similarly situated employees performing such services.

95.     At all relevant times, defendant had, and continue to have a policy and practice of failing and refusing to pay any overtime compensation (whether at the "regular" rate of time and one half or otherwise) to distributors for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206(a), 207(a)(1) and 215(a).  As described *supra,* plaintiff Charles Adler regularly worked substantially more than 40 hours per week.

96.     Defendant knowingly and willfully disregarded the provisions of the FLSA, as evidenced by its failure to compensate plaintiff at the statutory overtime rate for all hours worked in excess of forty (40) hours per week, when it knew or should have known such was due and that non-payment of overtime compensation would financially injure plaintiff.  Defendant's unlawful conduct stated herein was not in good faith, and defendant lacked reasonable grounds for believing that their acts or omissions were consistent with the FLSA.  *See* 29 U.S.C. §§ 216(b), 255(a), 260.

97.     Due to the reckless, willful and unlawful acts of the defendant, plaintiff Charles Adler suffered damages in an amount not presently ascertainable, including but not limited to all unpaid overtime wages plus, an equal amount to such wages as liquidated damages, pursuant to 29 U.S.C. §§ 206, 207, and 216(b).

98.     Plaintiff Charles Adler is also entitled to an award of his reasonable attorneys' fees, costs and expenses, including pre-judgment interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

## COUNT III

**FAILURE TO PAY WAGES AND IMPROPER DEDUCTIONS AND WITHHOLDINGS FROM WAGES IN VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW (NJWPL), N.J.S.A. 34:11-4.1 et seq.**

99.     Plaintiffs hereby incorporate by reference paragraphs 1 through 98 above as if more fully set forth herein and state the following claim for relief on behalf of plaintiffs Charles Adler and Grant Adler as against defendant Gruma.

100.    Plaintiffs were "employees" of defendant within the meaning of the NJWPL.

101.    Defendant was and is an "employer" within the meaning of the NJWPL, and was and is legally required to comply with the NJWPL and its obligations as an employer under the law.

102.    Plaintiffs are entitled to compensation and benefits from the defendant, including but not limited to "wages", wage supplements and benefits within the meaning of the NJWPL.

103.    Defendant also violated NJWPL in that it failed to pay plaintiffs for all time worked, including training time, and wrongfully withheld other wages, benefits, and wage supplements due and owing, such as final paychecks and vacation pay.

104.    At all relevant times, defendant was aware or should have known that it was required by New Jersey law to pay plaintiffs minimum wages for the hours worked each week, without deduction for the costs and expenses associated with their performance of services on behalf of defendant.

105.    At all relevant times, defendant was aware or should have known that it was required to make such payments timely and on a regular basis, as it presumably did for its other employees.

106.    As discussed *supra, d*efendant also willfully and impermissibly required plaintiffs to pay for insurance, equipment, product, fees, technology, and other business expenses and costs that were incurred for the direct benefit of defendant and the Gruma enterprise.  These charges and expenses reduced the plaintiffs' minimal earnings from product sales to below the minimum hourly wage, in violation of the NJWPL.

107.    Defendant also failed and refused to contribute to workers' compensation and unemployment insurance programs and did not allow plaintiffs to apply or qualify for workers' compensation or unemployment benefits, although they are legally entitled to such benefits, as employees.

108.    As a direct result of defendant's unlawful conduct, including without limitation their misclassification of plaintiffs and their willful violation of the NJWPL and failure to pay plaintiffs wages, plaintiffs are entitled to recover damages from defendant under the NJWPL, including without limitation damages for all such unpaid wages, fines and lost interest.

109.    Plaintiffs are also entitled to recover liquidated damages from defendant in an amount equal to 200% of plaintiffs' unpaid wages, under the NJWPL, in an amount to be determined at trial.

110.    Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs, including pre-judgment interest, for defendant's failure to pay minimum wages and their late payment of wages, pursuant to NJWPL.

## COUNT IV

**FAILURE TO PAY MINIMUM WAGES AND OVERTIME WAGES
IN VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW (WHL)
N.J.S.A.34:11-56a, *ET SEQ.***

111.    Plaintiffs hereby incorporate by reference paragraphs 1 through 110 above as if more fully set forth herein and state the following claim for relief on behalf of plaintiffs Charles Adler and Grant Adler as against defendant Gruma.

112.    The New Jersey Wage and Hour Law, N.J.S.A.34:11-56a etc., is designed to protect employees from unfair wages and excessive hours, establishing a minimum wage and overtime rate for certain employees.

113.    The New Jersey State Wage and Hour Law establishes a minimum wage rate and overtime rate for all workers in New Jersey that are covered by the Act. The law requires the payment of time and one half per hour for actual hours worked in excess of 40 hours, with certain exemptions.

114.    The WHL requires employers to compensate their employees at a rate not less than one and one-half times the regular rates of pay for any hours worked exceeding forty (40) hours in a workweek.

115.    Defendant is an "employer" within the meaning of the NJWHL, while Plaintiffs are "employees" within the meaning of the NJWHL.

116.    Both Plaintiffs Charles Adler and Grant Adler worked for the Defendant but were not paid minimum wages for their work in accordance with the NJWHL.

117.    Plaintiff Charles Adler regularly worked substantially in excess of forty (40) hours in a workweek, yet defendant failed to compensate him in accordance with the NJWHL minimum wage and overtime provisions.

118.    Defendant willfully violated the NJWHL.  Pursuant to the NJWHL, an employer who willfully fails to pay wages and/or overtime required by the NJWHL shall be liable for liquidated damages equal to 200% of plaintiffs' unpaid wages and overtime pay.

119.    As a direct result of defendant's unlawful conduct and bad faith conduct, including without limitation defendant's misclassification of plaintiffs, violations of the NJWHL, and failure to pay plaintiffs wages and to pay plaintiff Charles Adler overtime pay, plaintiffs have suffered substantial monetary damages, including without limitation damages for unpaid wages and overtime pay at the "regular" rate of pay for plaintiffs' services, as well as lost interest and attorneys' fees and costs.

120.    Such calculation can and should be made by reference to the hourly wages paid to Gruma's other similarly situated employees and/or by reference to the regular rate of wages prevailing in the industry for similarly situated employees performing the same services.

121.    Plaintiffs are further entitled to liquidated damages, pre-judgment interest, and reasonable attorneys' fees for defendant's violations of the NJWHL, in an amount to be determined at trial.

## COUNT V

### IMPROPER DEDUCTIONS FROM WAGES AND
### FAILURE TO REIMBURSE EXPENSES
### IN VIOLATION OF THE NJWPL, CHAPTER 173, LAWS OF NEW JERSEY, 1965, AND THE FLSA 29 U.S.C. § 206(a), 29 C.F.R. 531.35

122.    Plaintiffs hereby incorporate by reference paragraphs 1 through 121 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

123.    As discussed *supra,* while acting pursuant to the directions and under the direct supervision and control of defendant and discharging their duties for and on behalf of the

defendant, plaintiffs incurred work-related expenses, including but not limited to the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; communications equipment; handheld devices and software; route "purchase" expenses; merchandising and marketing support costs; stale product and replacement product; and warehouse fees.

124.    Plaintiffs necessarily incurred these substantial expenses at the direction of defendant, as a direct result of performing their job duties for defendant, and in furtherance of defendant's business operations.

125.    Defendant has charged plaintiffs with these expenses or otherwise withheld these funds from plaintiffs' minimal earnings on product sales, and unlawfully refused to reimburse plaintiffs without any lawfully sufficient reason or justification.

126.    Defendant has failed and refused to reimburse plaintiffs or otherwise indemnify plaintiffs as against these expenditures.  As such, defendant has violated the NJWPL, Chapter 173, Laws of the State of New Jersey, 1965, and 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35.

127.    Moreover, in furtherance of their unconscionable and illegal scheme to avoid making such reimbursements, defendant has knowingly and intentionally inserted illegal contract provisions in their SDDA agreement misclassifying plaintiffs as "independent contractors," rather than "employees," and purporting to hold plaintiffs contractually responsible for payment of these work-related expenses.

128.    In so doing, defendant has willfully and wrongfully managed to sidestep their legal duty to reimburse and indemnify plaintiffs, as employees, for these expenses and to provide other associated benefits to plaintiffs, as employees.

129.    By misclassifying the plaintiff employees and further by contractually requiring those employees to pay expenses incurred in the performance of their duties for defendant and/or

at the direction for defendant, defendant has violated and continue to violate NJWPL, NJWPL and the FLSA, 29 U.S.C. ' 206(a) and 29 C.F.R. 531.35.

130.    Accordingly, plaintiffs are all entitled to recover from defendant the full amount of all wages that were improperly charged, withheld, deducted, setoff, and not reimbursed or otherwise paid by defendant as a result of defendant's illegal policies described above.

131.    Moreover, inasmuch as defendant acted willfully in failing and refusing to meet its obligations to pay wages to plaintiffs, without making improper deductions, plaintiffs are also entitled to recover an additional amount of liquidated damages equal to two hundred percent (200%) of the total amount of the wages found to be due, as a result of these improper charges and expenses, plus pre-judgment interest, costs and attorneys' fees, pursuant to NJWPL, NJWHL and the FLSA, 29 U.S.C. § 216, in an amount to be determined at trial.

**COUNT VI**

**IMPROPER DEMANDS FOR "KICK-BACK" OF WAGES
IN VIOLATION OF NYLL § 193, 198, THE FLSA, 29 U.S.C. ' 206(B)
AND 29 C.F.R. § 531.35**

132.    Plaintiffs hereby incorporate by reference paragraphs 1 through 131 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

133.    In order to procure and obtain employment with Gruma, defendant demanded that plaintiffs "purchase" a Gruma route by, among other things, executing the SDDA, purportedly in exchange for the "exclusive" right and privilege of working for defendant, by servicing certain Gruma accounts, for the ultimate benefit of defendant. As part of the SDDA, plaintiffs were required to pay to Gruma a security fee or deposit.

134.    As described more fully above, the rights and privileges purportedly purchased are illusory, the SDDA is a contract of adhesion, and plaintiffs have been forced to bear the burdens and expenses of their employment, in a manner that is contrary to law and public policy.

135.    Under these circumstances, the consideration required by defendant from plaintiffs for the privilege of procuring and/or retaining employment constitutes an illegal "kick-back" of wages, prohibited by the NJWPL and NJWHL as well as the FLSA 29 U.S.C. § 206(a), and 29 C.F.R. § 531.35.

136.    By misclassifying the plaintiff employees and by contractually requiring those employees to pay a "purchase price" to work, along with the expenses incurred in the performance of their duties of defendant and/or at the direction for defendant, defendant has violated and continue to violate New Jersey law and the FLSA relating to demands for "kick-back" of wages.

137.    Plaintiffs are entitled to recover from defendant liquidated damages equal to two hundred percent (200%) of the total amount of the wages found to have been illegally extracted and thereby withheld from plaintiffs, pursuant to NJWPL, NJWHL and 29 U.S.C. § 216, and 29 C.F.R. § 531.35, in an amount to be determined at trial.

## COUNT VII

**FAILURE TO PROVIDE NOTICES
REQUIRED BY NJWPL AND NJWHL**

138.    Plaintiffs hereby incorporate by reference paragraphs 1 through 137 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

139.    Plaintiffs are "employees," and each of the defendant is an "employer," within the meaning of state and federal law.

140.    Defendant was required to provide plaintiffs with a detailed written notice advising them of, *inter alia,* the rate or rates of pay and basis thereof whether paid by the hour, shift, day, week, salary, piece, commission, or other as well as the regularly hourly rate and overtime rate of pay, for employees who are not exempt from overtime compensation.

141.    Plaintiffs are not exempt from overtime compensation.

142.    Defendant willfully failed to provide any of the plaintiffs with such notice, either at the date of their respective hires or at any time thereafter.

143.    Over the course of all of the plaintiffs' employment, defendant willfully failed to provide plaintiffs with any such notice, despite making frequent, unilateral changes to the compensation structure under which plaintiffs were paid for their services – i.e., through unilateral changes to work conditions, fixing of maximum product prices, and additions to the fees and expenses that were charged to plaintiffs, among other things.

144.    Finally, as a result of the above-described statutory violations, all plaintiffs are also entitled to an award other relief, fines, compensatory damages, including injunctive and declaratory relief, that the court in its discretion deems necessary or appropriate to prevent defendant from persisting in these violations.

## COUNT VIII

### RETALIATION IN VIOLATION OF THE
### FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 215(a)(3)

145.    Plaintiffs hereby incorporate by reference paragraphs 1 through 144 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

146.    As described *supra,* plaintiffs engaged in protected activities, including steps and efforts to obtain legal advice and seek redress for Gruma's ongoing violations of both state and federal law.

147.    Plaintiffs notified defendant of their intent to seek legal redress for Gruma's violations under the FLSA and New Jersey law, and defendant was aware of plaintiffs' efforts to protect their interests and assert their claims.

148.    Plaintiffs' actions were protected acts and activities under the FLSA, 29 U.S.C. § 215(a).

149.    In response to the plaintiffs' protected activities, defendant has unlawfully retaliated and targeted the plaintiffs and terminated plaintiffs and otherwise took adverse employment actions, including but not limited to by terminating plaintiffs and otherwise subjecting all of the plaintiffs to hostile and retaliatory acts, threats, and penalties.

150.    Based upon the foregoing, plaintiffs are entitled to recover from defendant, *inter alia*, statutory damages, attorneys' fees, interest, statutory liquidated damages in an amount equal to 100% of their actual damages, as well as injunctive relief pursuant to 29 U.S.C. §§ 215(a)(3), 216(b), in an amount to be determined at trial.

<u>COUNT IX</u>

**RETALIATION IN VIOLATION OF NJWPL AND NJWHL**

151.    Plaintiffs hereby incorporate by reference paragraphs 1 through 150 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

152.    Plaintiffs' actions as described above likewise constitute protected acts under both the NJWPL and NJWHL.

153.     In response to the plaintiffs' protected activities, defendant unlawfully retaliated and targeted the plaintiffs and imposed draconian and oppressive adverse employment actions, including but not limited to by terminating plaintiffs and otherwise subjecting all of the plaintiffs to hostile and retaliatory acts, threats, and penalties.

154.     Based upon the foregoing, plaintiffs are entitled to recover from defendant, *inter alia*, statutory damages, attorneys' fees, interest, statutory liquidated damages in an amount two hundred percent (200%) of all wages due and owing, as well as injunctive relief.

## COUNT X

## RESCISSION

155.     Plaintiffs hereby incorporate by reference paragraphs 1 through 154 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

156.     Despite the terms of the SDDA, as drafted exclusively by Gruma, plaintiffs' relationship with Gruma satisfies every aspect of the test for employment, and not for independent contractor status.

157.     At all relevant times, defendant knew that the "independent contractor" classification in the SDDA was and is improper and inaccurate and that, in fact, plaintiffs were and are "employees" entitled to the benefits and protections of all laws enacted for the benefit and protection of employees.

158.     Defendant took advantage of the parties' lack of sophistication and their unequal bargaining power and intentionally misled plaintiffs as to their employment status, by advising them that they are not employees, but are independent contractors with the power and prospect to act independently, exercise independent judgment, and profit accordingly.  This was not true,

and defendant intended to and in fact did supervise, control, and dictate every aspect of plaintiffs' services.

159.    Furthermore, defendant's insistence that the plaintiffs "purchase" a route, upon the onerous and one-sided terms and conditions imposed by defendant, was also intentionally deceptive and inconsistent with federal and state labor law relating to the terms and conditions of employment and the payment of wages.

160.    Defendant's misclassification of their distributors as independent contractors, their concealment and/or non-disclosure of the true nature of the relationship between defendant and plaintiffs, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful business practice by defendant, contrary to state and federal law.

161.    The SDDAs are and at all relevant times have been contracts of adhesion, drafted exclusively by Gruma and/or its legal counsel, with no negotiation with distributor plaintiffs, who were required to sign the Agreement as a condition of employment. Plaintiffs were required to sign the form contracts "as is," without any changes made to the terms contained therein.

162.    The terms and conditions of the SDDA are not only adhesive and unconscionable, they are also inconsistent with federal and state labor law governing the terms and conditions of employment and payment of wages.

163.    Accordingly, the SDDA are against public policy, unconscionable, and thus unenforceable against the individual plaintiffs and those portions that violate law are subject to rescission.  Plaintiffs should be reimbursed for the monies they paid to "purchase" routes pursuant to these agreements, plus interest.

## COUNT XI

### UNJUST ENRICHMENT UNDER NEW JERSEY LAW
### ON BEHALF OF ALL PLAINTIFFS

164.    Plaintiffs hereby incorporate by reference paragraphs 1 through 163 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

165.    Because of defendant's conduct in misclassifying plaintiffs as independent contractors, defendant has forced plaintiffs to bear the normal costs and incidents of Gruma's business and has thus unjustly enriched itself, to the detriment of plaintiffs, in violation of the common law of New Jersey.

166.    As a direct and proximate result of defendants' conduct, Gruma has received substantial benefits to which it had no entitlement, at plaintiffs' expense, including but not limited to increased profits, decreased employment taxes, decreased premiums for workers' compensation and disability benefits, fewer business expenses, and the like.

167.    Allowing defendant to keep and retain these substantial benefits would be unjust, unfair and inequitable, under the circumstances.

168.    As a direct and proximate result of defendant's conduct, as alleged herein, plaintiffs have suffered and continue to suffer substantial losses, for which they are entitled to recover compensatory damages in an amount to be determined at trial.

## COUNT XII

### DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

169.    Plaintiffs hereby incorporate by reference paragraphs 1 through 168 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

170.    Despite defendant's control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the effect that workers such as plaintiffs are entitled to the protections due employees under federal and New Jersey law, defendant continues to misclassify its distributors as independent contractors.  As a result, these workers are deprived of the rights and protections guaranteed by federal and state law to employees, and they are deprived of employer-financed workers' compensation coverage and unemployment insurance benefits.

171.    An actual controversy has arisen between the plaintiffs and defendant relating to the following matters:

a.    Whether defendant has unlawfully misclassified plaintiffs as independent contractors, and has thus denied plaintiffs of the benefits of employee status, including but not limited to their entitlement to:

1.  Unpaid wages and overtime wages;

2.  Reimbursement of expenses incurred for defendants' benefit;

3.  Health benefits;

4.  Pension benefits;

5.  Life insurance; and

6.  Disability insurance.

b.    What amounts plaintiffs are entitled to receive in compensation and benefits.

c.    What amounts plaintiffs are entitled to receive in interest on unpaid benefits due and owing.

d.    What amounts plaintiffs are entitled to receive from defendant in statutory penalties and interest.

172.     Pursuant to 28 U.S.C. § 2201, this Court should issue a declaratory judgment establishing that plaintiffs are or were employees of Gruma and that plaintiffs are or were therefore entitled to all the rights and benefits of employment pursuant to the laws of the United States and of New Jersey.

173.     Plaintiffs therefore seek entry of a declaratory judgment in their favor which declares Gruma's practices as heretofore alleged to be unlawful and which provides for recovery of all sums determined by this Court to be owed by defendant to the plaintiffs.

## COUNT XIII

### VIOLATIONS OF NEW JERSEY FRANCHISE PRACTICES ACT
### (N.J.S.A. § 56:10-1 *et seq*)

174.     Plaintiffs hereby incorporate by reference paragraphs 1 through 173 above as if more fully set forth herein and state the following claim for relief on behalf of all plaintiffs as against defendant Gruma.

175.     In addition, and to the extent necessary, in the alternative, the plaintiffs' purchase of the distributorship route constituted the purchase of a "franchise" within the meaning of the FTC Franchise Rule, 16 CFR Parts 436, 437m and the New Jersey Franchise Practices Act (NJFPA), N.J.S.A. § 56:10-1, *et seq.*

176.     Pursuant to the SDDA agreement, plaintiffs were purportedly granted the right to engage in the business of offering, marketing, delivering, selling, or distributing goods or services under Gruma's business model or system, which is prescribed in substantial part by Gruma.

177.     The SDDA Agreement also granted plaintiffs the right to engage or license in the business of offering, marketing, delivering, selling, or distributing goods or services that are

substantially associated with Gruma's trademark, service mark, trade name, logotype, or advertising.

178.   Moreover, plaintiffs were required to provide a "franchise fee," in the form of the purchase price of the route and other requirements, including the purchase of product, use of company provided technology, and the payment of certain fees for the use and so-called benefit of Gruma's licensing and products.

179.   As part of the SDDA, plaintiffs were required to establish a place of business in New Jersey.

180.   Thus, in addition to being "employees" and simultaneously therewith, the plaintiffs were also "franchisees," entitled to the broad protections and remedies available under the NJFPA.

181.   Gruma is a "franchisor," within the meaning of the NJFPA.

182.   The NJFPA requires that a franchise may not be terminated "without cause" as was purportedly done, albeit in pretext, in this case.

183.   Pursuant to this purpose, the NJFPA provides that "[i]t shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause." N.J.S.A. 56:10-5. In addition, the NJFPA prohibits the imposition of "unreasonable standards of performance upon a franchisee." N.J.S.A. 56:10-7(e).

184.   On or about June 9, 2022, defendant terminated the plaintiffs purportedly "without cause" in violation of the NJFPA.

185.   In so doing, defendant wrongfully "took" the plaintiffs' route and terminated the plaintiffs' employment and livelihood, resulting in a substantial takings by the defendant and substantial damages to the plaintiffs.

186.    Moreover, upon changing the terms and conditions of their relationship with plaintiffs, defendant likewise failed to provide or file with the department of law or to provide to plaintiffs any advance or even contemporaneous notice of such changes or amendments, as they were required to do pursuant to the NJFPA.

187.    Defendant offered to sell and did sell the Gruma franchise to plaintiffs in a manner that wholly disregarded and failed to comply with the formal registration, disclosure, and offering requirements set forth in the Franchise Act, and NJFPA – and such failures are ongoing and continue to date.

188.    Defendant likewise has also wholly failed to comply with the recordkeeping, accounting, and filing requirements set forth in the NJFPA  – and such failures are ongoing and continue to date.

189.    Defendant is not exempt from the requirements of the NJFPA.

190.    In failing to comply with any of the minimum requirements of the NJFPA and entering into SDDA that were and continue to be illusory, adhesive, unprofitable, and unduly burdensome on plaintiffs, defendant employed – and continues to date to employ – a device, scheme, or artifice to defraud plaintiffs.

191.    In conspicuously failing to disclose or recognize the true nature of the transactions as the sale of a franchise subject to the NJFPA, defendant has also willfully, deceptively, and fraudulently misrepresented and concealed its duties and obligations under the NJFPA and plaintiffs' corresponding rights and remedies.  Defendant's fraudulent misrepresentations and deceptive practices continue to date.

192.    Moreover, in conducting business operations in the manner described herein, so as to burden plaintiffs with the heavy costs and expenses of performing services for Gruma,

42

while unduly restricting, limiting, and controlling plaintiffs' ability to act independently to earn a profit and maximize the returns on their franchise investments, defendant engaged and continues to engage in an act, practice, or course of business which operates as a fraud or deceit upon plaintiffs, in violation of the NJFPA.

193.    As a result of defendant's willful and material violations of the NJFPA, many of which are ongoing, all plaintiffs are entitled to recover their actual damages and the statutory damages set forth in the NJFPA.  Plaintiffs are entitled to reinstatement as franchisees and to get their route back and employment reinstated, with back pay and compensation.  Plaintiffs are also entitled to recover their attorneys' fees, interest and court costs.

## COUNT XIV

### CLAIM FOR RELIEF FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

194.    Plaintiffs hereby incorporate by reference paragraphs 1 through 193 above as if more fully set forth herein, and state the following claim for relief on behalf of each of the plaintiffs as against defendant Gruma.

195.    As a result of defendant's conduct as alleged herein, including but not limited to its actions in assuming control over, and retaining all of the benefits of, the Gruma distribution route formerly operated by the plaintiffs – for which routes plaintiffs paid substantial consideration – defendant Gruma acted in a manner that was designed to, and actually did, deprive these plaintiffs of their right to receive the benefits under their distribution agreements.

196.    More specifically, Gruma imposed increasingly oppressive terms and conditions designed to impede and prevent plaintiffs' performance and terminated their contract "without cause" as a pretext, because plaintiff Charles Adler was involved in organizing and consulting with legal counsel to address the unlawful conduct by Gruma.  Gruma assumed control of the

plaintiffs' route without compensating them – all in breach of the covenant of good faith and fair dealing implied in every contract under New Jersey law.

197.    Moreover, by failing and refusing to compensate plaintiffs for the value of the distribution route, Gruma acted in an unfair and oppressive manner, depriving plaintiffs of the benefits of the contract to which they were entitled, and breached the covenant of good faith and fair dealing implied in every contract under New Jersey law.

198.    Accordingly, plaintiffs are each entitled to recover compensatory damages from defendant for its breaches of the covenant of good faith and fair dealing, in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, plaintiffs pray for judgment against defendant as follows:

a.    Actual compensatory damages to plaintiffs to the full extent permitted by law;

b.    A judgment in favor of plaintiffs for all statutory penalties and liquidated damages allowed by law;

c.    Award of prejudgment interest to plaintiffs;

d.    Award of injunctive relief enjoining and directing the defendant to reclassify plaintiffs as employees, to keep and preserve appropriate wage and employment records and comply with all applicable wage/notice requirements, and to provide plaintiffs with all applicable wages, benefits, and wage supplements on a going forward basis;

e.    Award of judgment reinstating the plaintiffs as employees of defendant, with an award of backpay, benefits, and interest retroactive to June 9, 2022;

f.    Award of judgment reinstating the plaintiffs as franchisees of defendant, with an award of backpay, benefits, and interest retroactive to June 9, 2022;

44

g.      Award of judgment reinstating and restoring plaintiffs to their route and compensating plaintiffs for all actual damages incurred a result of defendant's wrongful termination of the SDDA;

h.      Declaring that the defendants' acts described in this Complaint constitute violations of the New Jersey Wage Payment Law and New Jersey Wage and Hour Law, New Jersey common law, and the federal Fair Labor Standards Act and/or, the New Jersey Franchise Practices Act;

g      An order enjoining the defendant from any and all further retaliatory acts and penalties as taken against the plaintiffs;

h.      Award of punitive damages in an amount to be determined at trial;

i.      Attorneys' fees and costs as provided by law; and

j.      Such other further relief as the Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a jury trial on all issues so triable.

Dated:  White Plains, New York
       November 10, 2022

BLEAKLEY PLATT & SCHMIDT, LLP

By: /s/ *Lino J. Sciarretta*
STEPHEN J. BROWN  (sbrown@bpslaw.com)
SUSAN E. GALVÃO (sgalvao@bpslaw.com)
LINO J. SCIARRETTA (lsciarretta@bpslaw.com)
*Attorneys for Plaintiffs*
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NY 10601
Tel. No.: (914) 949-2700