UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

CHARLES L. ADLER, GRANT ADLER,
and C. M. ADLER, LLC,

                        Plaintiffs,

    - against -

GRUMA CORPORATION, D/B/A MISSION
FOODS, GUERRERO MEXICAN FOOD
PRODUCTS, ETC.

                        Defendants.

-------------------------------------------------------------------X

Civil Action No.:  22-cv-06598

*Electronically Filed*

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION**

BLEAKLEY PLATT & SCHMIDT, LLP
*Attorneys for Plaintiffs*
One North Lexington Avenue
4th Floor
White Plains, New York 10601
(914) 949-2700

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................. 1

LEGAL ARGUMENT............................................................................................ 6

   POINT I.   STANDARD FOR MOTION............................................................ 6

   POINT II.   THE COURT SHOULD DENY THE DEFENDANT'S MOTION ................. 6

    A.  NEW JERSEY LAW APPLIES TO THESE CLAIMS ............................................ 7

    B.  THE NEW JERSEY CONSTITUTION GUARANTEES NEW JERSEY
    CITIZENS THE RIGHT TO A CIVIL JURY TRIAL ...................................... 12

    C.  THE SDDA ARBITRATION PROVISION DOES NOT COVER THE
    PLAINTIFFS' STATUTORY CLAIMS..................................................... 16

    D.  THE SDDA IS SUBSTANTIVELY UNCONSCIONABLE AS IT ALTERS AND
    LIMITS THE RIGHTS AND REMEDIES AVAILABLE TO THE PLAINTIFFS IN
    ARBITRATION ............................................................................. 22

    E.  THE FAA IS NOT APPLICABLE IN THIS CASE BECAUSE THE PLAINTIFFS
    ARE ENGAGED IN THE INTERSTATE TRANSPORTATION OF GOODS AND
    ARE THEREBY EXEMPT UNDER THE FAA............................................. 25

    F.  THE NJFPA PROHIBITS MANDATORY ARBITRATION CLAUSES............... 26

CONCLUSION ..................................................................................................... 27

**TABLE OF AUTHORITIES**

Page

**Cases**

*Atalese v. U.S. Legal Services Group, L.P.,* 219 N.J. 430, 443, 99 A.3d 306 (2014)... 8, 12, 16, 18

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513,
528 (3d Cir. 2009).................................................................................................................. 6

*Circuit City v. Adams,* 532 U.S. 105 at 119, 121 S. Ct. 1302 (2001) ......................................... 25

*Colon v Strategic Delivery Solutions, LLC,* 459 NJ Super 349, 358, 210 A3d 932,
938 (Super Ct App Div 2019)............................................................................................ 25

*Curtis v. Cellco P'ship,* 413 N.J.Super. 26, 31, 992 A.2d 795 (App. Div.), *certif. denied,*
203 N.J. 94, 999 A.2d 462 (2010)..................................................................................... 13

*Easterday v Logistics LLC,* 2021 US Dist LEXIS 255394, at *23 ................................... 9, 17, 21

*First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S. Ct. 1920,
131 L. Ed. 2d 985 (1995).................................................................................................... 16

*Flintkote Co. v Aviva PLC,* 769 F.3d 215, 219 (3d Cir. 2014), *citing Quilloin v. Tenet
Healthsystem Phila., Inc.,* 673 F.3d 221, 228 (3d Cir. 2012) ....................................... 6

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,* 168 N.J. 124, 132,
773 A.2d 665 (2001) ..................................................................................................... 16, 18

*General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 331 n. 21 (3d Cir. 2001)........ 8

*Griffin v. Burlington Volkswagen, Inc.,* 411 N.J.Super. 515, 518, 988
A.2d 101 (App. Div. 2010) ................................................................................................ 13

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S. Ct. 588,
154 L. Ed. 2d 491 (2002) ................................................................................................... 16

*Karl's Sales & Service,* 249 N.J. Super. 487, 493, 592 A.2d 647 (1991) .................................... 17

*Kubis & Perszyk Assocs. v. Sun Microsystems,* 146 N.J. 176, 193, 680 A.2d 618 (1996) ....... 2, 27

*Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 228 (3d Cir. 2005)
(*quoting Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427,
116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996)).................................................................... 7

*Marchak v. Claridge Commons Inc.,* 134 N.J. 275, 281, 633 A.2d 531 (1993) .......................... 17

*Martindale v. Sandvik, Inc.,* 173 N.J. 76, 800 A.2d 872 (2002)............................................ 12, 18

*McDonnell v. Illinois,* 319 N.J. Super. 324, 725 A.2d 126, 134
(N.J. Super. Ct. App. Div. 1999) ........................................................................................ 9

*Moon v. Breathless Inc.,* 868 F.3d 209 (3d Cir. 2017) ................................................................ 18

*Nething v. Merck & Co.,* 2018 N.J. Super. Unpub. LEXIS 5541, *8
(Super. Ct, Law Div., Union Cty., August 16, 2018) .............................................. 8, 11, 16, 17

*New Prime, Inc. v. Oliveira,* 139 S. Ct 532, 542, 202 L. Ed. 2d 536 (2019)............................... 25

*North Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 158 N.J. 561, 568,
730 A.2d 843 (1999) (emphasis added) (*quoting Instructional Sys., Inc. v.
Computer Curriculum Corp.,* 130 N.J. 324, 341, 614 A.2d 124 (1992)) ................................ 7

*PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir. 1990) .......................................... 21

*Parilla v IAP Worldwide Servs. VI, Inc.,* 368 F3d 269, 276-277 (3d Cir 2004).................... 22, 23

*Peikin v. Kimmel & Silverman,* P.C., 576 F. Supp. 2d 654, 657 (D.N.J. 2008) ........................... 9

*Pepe v. Rival Co.,* 85 F. Supp. 2d 349, 382 (D.N.J. 1999) ........................................................... 8

*Quilloin v Tenet HealthSystem Phila., Inc.,* 673 F3d 221, 228-229 (3d Cir 2012) ..................... 17

*Rockware v ETZ Hayim Holding, Inc.*, 2020 US Dist LEXIS 241991, at \*4-5 ............................ 9

*Rodriguez v. Raymours Furniture Co.*, 225 N.J. 343, 138 A.3d 528, 540-41 (N.J. 2016) ........... 10

*Roman v. Bergen Logistics*, LLC, 456 N.J. Super. 157, 192 A.3d 1029
    (N.J. Super. Ct. App. Div. 2018) ........................................................................... 10

*Schunkewitz v. Prudential Securities Inc.*, 99 Fed. Appx. 353, 355 (3d Cir. 2004) ..................... 8

*Singer v. Commodities Corp. (U.S.A.)*, 292 N.J. Super. 391, 402, 678
    A.2d 1165 (App. Div. 1996) .................................................................................. 17

*Statewide Realty Company v. Fidelity Management and Research Company, Inc.*,
    259 N.J. Super. 59, 68, 611 A.2d 158 (1992) ......................................................... 17

**Statutes**

Fed. R. Civ. P. 56(a) ........................................................................................................ 6

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ................................................................. 25

**Secondary**

Restatement (Second) of Contracts § 208 (1981) ......................................................... 22

## PRELIMINARY STATEMENT

Plaintiffs hereby submit this Memorandum of Law in opposition to the Defendant's

Notice of Motion to Dismiss and Compel Arbitration dated February 13, 2023 ("Motion"), filed

on behalf of Gruma Corporation, d/b/a Mission Foods, Guerrero Mexican Food Products, etc.

("Gruma" or "Defendant"). Contrary to the arguments set forth in Defendant's motion, this

action is properly before this Court and Defendant's motion must be denied in its entirety.

.        As set forth in detail in the Plaintiffs' Complaint dated November 14, 2022 (ECF Doc. 1,

herein "Complaint"), this action was commenced by individual Plaintiffs Charles L. Adler, Grant

Adler, and C.M. Adler, LLC, a franchisee and distributor of Gruma food products to accounts

within an assigned territorial region in New Jersey (collectively "Adler" or "Plaintiffs"). The

Complaint seeks redress against Gruma, a multinational food corporation goliath, following

Gruma's unlawful and improperly motived termination of the Plaintiffs in June 2022.

Gruma makes, supplies and distributes tortillas and other food products under the Mission

Foods and other brands throughout North America (US, Canada, Mexico, etc.)[1]. The facts in this

action arise in New Jersey, where Gruma maintains and does business and distributes its food

products to large commercial food stores (e.g., Stop & Shop, Shoprite, Acme, etc.) and other

retail accounts, by and through a large distribution system of warehouses and distributors like the

Plaintiffs. New Jersey is also where the Plaintiffs work, reside, and ran their Gruma route and

maintained their warehouse to receive, store, distribute and sell Gruma products.

Gruma's business model and success depends upon the wide distribution and sale of its

products and brands to thousands of retail and corporate accounts in and about the United States,

and more particularly, New Jersey. To that end, Gruma dictates and controls virtually every

---

[1]        Gruma products include such well known lines as Mission Corn and Flour Tortillas, Mission Flatbread,
Mission Naan, Mission Salsa Dip, and many others.

1

detail and aspect of its distributors', including the Plaintiffs, day-to-day services and operations, scrutinizing and overseeing Plaintiffs' work at every level of the distribution process, from training, sales, marketing, pricing, and delivery, to the stocking of shelves and product placement at each Gruma account.

To avoid employment-related costs, expenses and liabilities for its workers and distributors (such as overtime pay, benefits, FICA and Social Security contributions, workers' compensation insurance, and unemployment benefits and costs, to name a few only), Gruma uses what is purportedly an "independent distributor" model, by way of a "Store Door Distribution Agreement" or "SDDA" between Gruma and its distributors, including the Plaintiffs (a copy of the SDDA between C.M. Adler, LLC and Gruma Corporation dated March 7, 2014 is annexed to the Complaint at Exhibit "A").

Although not expressly stated in the parties' respective SDDA, the relationship established between Adler and Gruma is unquestionably that of a franchisor-franchisee under New Jersey law, and more specifically, the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. 56:10-1, et seq.

The NJFPA was enacted with the general objective of "protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors who violate the Act." *Kubis & Perszyk Assocs. v. Sun Microsystems*, 146 N.J. 176, 193, 680 A.2d 618 (1996). Consistent with this purpose, the NJFPA provides that "[i]t shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause." N.J.S.A. 56:10-5. In addition, the NJFPA prohibits the imposition of "unreasonable standards of performance upon a franchisee." N.J.S.A. 56:10-7(e).

2

Among other things, the NJFPA provides certain protections and rights to franchisees due to strong public policy considerations and is designed to prevent franchisees, like the Plaintiffs, who generally have very limited bargaining power with a large conglomerate such as Gruma, from being subjected to the improper and unilateral termination of their agreements, jobs, and livelihoods in which they have invested so much of their lives and savings. *See Kubis*, 146 N.J. 176.

In addition, Gruma exerted a high level of control and direction over the Plaintiffs' work, both under contract and in fact; the services the Plaintiffs performed were a material part of and inextricably related to Gruma's day-to-day business; and the Plaintiffs were not engaged in an independently established business. These factors all lead to the conclusion that Plaintiffs were, in fact, employees of Gruma, as well as franchisees.

Plaintiffs' claims arise from, and seek redress for, Gruma's intentional, retaliatory and unlawful termination in June 2022, which was purportedly a "termination without cause", in violation of the NJFPA and in violation of the anti-retaliation provisions of both state and federal employment law. [2]

Specifically, Plaintiffs were part of a group of other Gruma distributors who, in early 2022, actively and demonstrably engaged in "protected activity" under the Fair Labor Standards Act and state law regarding what they perceived as unfair work terms, pay, conditions and other unfair treatment and conduct by Gruma, in violation of their rights as employees and/or franchisees of Gruma. These are hardworking, blue-collar distributors, some of whom are not college educated, and all of whom need their routes (which they purchased from third parties) to

---

[2]    Plaintiffs also seek relief for Defendant's other unlawful, heavy-handed, and oppressive policies and practices in violation of Plaintiffs' statutory and common law rights – which policies and practices have severely and unconscionably undermined and obstructed Plaintiffs' ability to earn a fair wage and support their families, despite their generating hundreds of thousands of dollars in profits for Gruma and its management team along the way

3

make their daily living, transporting goods, stocking shelves, and performing other related services for Gruma.

As soon as the Defendant Gruma became aware of these complaints and efforts to organize, and other related protected activity, Gruma immediately terminated the leaders of this effort within the company and terminated Plaintiffs and several other members of the collective actors. At least four other distributors were terminated – two of whom shared warehouse space with the Plaintiffs, and were at a meeting with counsel that was held in early May 2022.

These retaliatory and punitive actions by Gruma were intended to and did actually chill and have a cooling effect upon the protected activity that Plaintiffs and the collective others were engaging in within the company, and were expressly designed to punish (and did punish) the workers and distributors that sought to advance the protections and rights afforded workers under both federal and state law.

Plaintiffs seek, *inter alia*, to be recognized and restored as a franchisee and distributor of Gruma, with all of the attendant rights and privileges under applicable federal and state law, to enjoin Gruma's unlawful practices going forward, and to recover from Gruma all appropriate compensatory damages, lost wages, unlawful deductions and charges against earnings, as well as statutory liquidated and multiplied damages, for Defendant's past and ongoing unlawful acts and omissions, including but not limited to acts of unlawful retaliation.

In addition, Plaintiffs seek to recover statutory and other damages arising from the unlawful and retaliatory actions undertaken by Gruma, as against the Plaintiffs, in response to and in retribution for Plaintiffs' individual and collective efforts to assert their rights and object to Gruma's unlawful employment practices. Finally, Plaintiffs also seek the costs and expenses of

this action, including their attorneys' fees, consistent with their statutory rights under federal and state law.

Contrary the arguments and caselaw set forth in Defendant's motion, this is a not a run of the mill commercial dispute that mandates arbitration in a forum chosen by Defendant in the adhesive distributor agreement. Rather, New Jersey statutory and case law set forth strong public policy interests that provide the Plaintiffs with important protections and a platform to litigate these claims in this Court and under New Jersey law.

As set forth in detail below, the arbitration provision that Defendant relies upon in this case is unenforceable and void as it violates established New Jersey public policy and caselaw, because it does not provide a *clear and unambiguous* waiver of Plaintiffs' rights to a jury trial in court – which is a constitutional protection afforded all New Jersey citizens. The arbitration provision is substantively unconscionable as it alters and unfairly limits Plaintiffs' rights and remedies available in arbitration – in favor of affording broad protection and limited liability to Gruma, the giant Defendant corporation. As articulated below, and contrary to the Defendant's claims, the parties' agreement is exempt from the Federal Arbitration Act (FAA) because the Plaintiffs are engaged in interstate transportation. Finally, the Plaintiffs' statutory claims are not covered by the distributor agreement and Plaintiffs are entitled to proceed with their NJFPA and retaliation claims in this Court, in any event.

5

## LEGAL ARGUMENT

### POINT I.

### STANDARD FOR MOTION

In assessing the motion to compel arbitration itself, the Court is to apply the standard for summary judgment in Rule 56(a), under which the motion should be granted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In so doing, the Court views "the facts and draw inferences in the light most favorable to the nonmoving party." *Flintkote Co. v Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014), *citing Quilloin v. Tenet Healthsystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). This standard is applied because an "order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009) (quotation marks and citations omitted); *Flintkote Co.*, 769 F.3d at 219.

Defendant has not and cannot meet this high standard under New Jersey law, which is the appropriate substantive law that this Court, sitting in diversity, must apply in evaluating these issues, because there are genuine disputes as to material facts relative to the so-called agreement to arbitrate and the application of state and federal law designed to specifically protect these Plaintiffs.

### POINT II

### THE COURT SHOULD DENY THE DEFENDANT'S MOTION

As set forth below, Defendant's motion should be denied because: (1) the substantive law of the State of New Jersey – which has a much greater interest in and connection to the Plaintiffs'

6

claims – must be applied, notwithstanding the reference to Texas law in the SDDA; (2) the liberal

protections afforded to employees and franchisees working within the State of New Jersey must

be recognized and applied to the claims in this action; (3) the SDDA does not contain wording

sufficient for Plaintiffs to have had a clear understanding that by agreeing to arbitration, they

waived the right to bring certain claims in a court of law before a judge or jury; (4) the arbitration

provision in the SDDA does not cover the Plaintiffs' statutory claims; (5) the arbitration provision

is substantively unconscionable; and (6) the FAA does not compel arbitration here because the

Plaintiffs fall within the transportation worker exception to the FAA.

### A.   NEW JERSEY LAW APPLIES TO THESE CLAIMS

In support of its motion to dismiss and compel arbitration, Gruma cites to the arbitration

provision and choice of law provision in the SDDA.  The main thrust of the Defendant's motion

is that this Court must apply Texas law (and the Federal Arbitration Act) to the facts and

allegations in this action, thereby compelling dismissal of the Complaint in favor of arbitration.

This is incorrect and glosses over a whole body of substantive New Jersey law on the matter.

Under the Erie doctrine, "federal courts sitting in diversity apply state substantive law and

federal procedural law." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 228 (3d Cir.

2005) (*quoting Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 135

L. Ed. 2d 659 (1996)). Therefore, this Court must apply New Jersey law in determining the

validity of the choice of law provision in the SDDA.

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a

particular state, New Jersey courts will uphold the contractual choice <u>if it does not violate New

Jersey's public policy</u>." *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 568,

730 A.2d 843 (1999) (emphasis added) (*quoting Instructional Sys., Inc. v. Computer Curriculum*

7

*Corp.*, 130 N.J. 324, 341, 614 A.2d 124 (1992)); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n. 21 (3d Cir. 2001); *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 382 (D.N.J. 1999) ("New Jersey courts tend to enforce [choice of law] provisions in contracts provided the public policies of New Jersey are not offended and the contract bears some relation to the chosen jurisdiction.") *aff'd*, 254 F.3d 1078 (3d Cir. 2001); *Schunkewitz v. Prudential Securities Inc.*, 99 Fed. Appx. 353, 355 (3d Cir. 2004) ("New Jersey gives effect to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy.").

In New Jersey, "[t]he absence of any language in the arbitration provision that [a party is] waiving [its] statutory right to seek relief in a court of law renders the provision unenforceable." *Atalese v. U.S. Legal Services Grp. L.P.*, 219 N.J. 430, 436, 99 A.3d 306 (2014). "[N]o prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights. However, whatever words compose an arbitration agreement, they must be *clear and unambiguous* that a [party] is choosing to arbitrate disputes rather than have them resolved in a court of law." *Id.* at 447 (emphasis added). Conversely, in the State of Texas, courts interfere as little as possible with agreements to arbitrate which would leave these New Jersey citizens without the protections afforded under New Jersey state law for acts and claims arising and occurring in New Jersey. Thus giving effect to the choice of law in the SDDA will conflict with and frustrate strong New Jesery public policy both under *Atalese* and the NJFPA.

The arbitration provision in the SDDA does not contain the required clear and ambiguous language that is required by New Jersey law and is therefore violative of New Jersey public policy. Indeed, the provision does not reference "waiver", "jury", "trial" or "court" at all let alone a statement that the Plaintiff was knowingly choosing to arbitrate certain claims rather than have them resolved in a court of law. *See* SDDA section 15(i)(ii). *See*, *Nething v. Merck & Co.*, 2018

8

N.J. Super. Unpub. LEXIS 5541, *9 (Super. Ct, Law Div., Union Cty., August 16, 2018); *see also, Easterday v Logistics LLC*, 2021 US Dist LEXIS 255394, at *23 [DNJ June 30, 2021, No. 15-7559 (RBK/AMD)(Court held that the arbitration clause in the parties' agreement did not clearly and unambiguously explain that Plaintiff is waiving his right to seek relief in court for a breach of his statutory right.)

Moreover, New Jersey is the appropriate law to apply using the traditional conflicts of law analysis. New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination (NJLAD) and other types of claims. *See Peikin v. Kimmel & Silverman*, P.C., 576 F. Supp. 2d 654, 657 (D.N.J. 2008) ("These principles have been applied repeatedly in cases brought by New Jersey residents against out-of-state-employers, with courts consistently holding that the claim of a New Jersey resident for her allegedly wrongful dismissal from out-of-state employment is governed by the law of the state in which she was employed." (citation omitted)); *see, also, McDonnell v. Illinois*, 319 N.J. Super. 324, 725 A.2d 126, 134 (N.J. Super. Ct. App. Div. 1999) (finding that plaintiff had a right to NJLAD's substantive anti-discrimination protections where he was a New Jersey resident, working in New Jersey for an Illinois-based employer with a New Jersey office), *aff'd*, 163 N.J. 298, 748 A.2d 1105 (N.J. 2000).

Simply stated, "public policy considerations prevent New Jersey residents from waiving their substantive rights" under state employment law "through contractual choice of law provisions that invoke another state's law." *Rockware v ETZ Hayim Holding, Inc.*, 2020 US Dist LEXIS 241991, at *4-5 [DNJ Dec. 23, 2020, Civil Action No. 20-4389 (MAS) (DEA)]) citing James H. Walzer, 52 N.J. Prac. Series Elements of Action § 22:3 (Oct. 2020 ed.) (observing that New Jersey courts are often "more cautious when the parties' choice-of-law selection may have adverse implications on an employees' ability to assert claims under New Jersey's employment

law statutes. Indeed, as a matter of New Jersey public policy, courts do not permit employees to waive their substantive rights under such statutes." (citing *Rodriguez v. Raymours Furniture Co.*, 225 N.J. 343, 138 A.3d 528, 540-41 (N.J. 2016))).

New Jersey courts have held that allowing residents employed within the state to waive the statutory protections of the NJLAD would be "contrary to the public policy" goal expressed in the NJLAD - "the elimination of discrimination." *Rodriguez*, 138 A.3d at 540-41 (holding that public policy considerations prevented a plaintiff from contractually waiving substantive NJLAD provisions relating to the law's statute of limitations period); *see also Roman v. Bergen Logistics*, LLC, 456 N.J. Super. 157, 192 A.3d 1029 (N.J. Super. Ct. App. Div. 2018) (holding that public policy considerations prevented plaintiff from contractually waiving substantive provisions related to the NJLAD's statutory right to punitive damages).

In this case, essentially all of the material contacts associated this matter are grounded in New Jersey. Plaintiffs are citizens of New Jersey. The SDDA agreement was entered into in New Jersey and covers an assigned territory wholly within New Jersey and concerns work and services to be performed in New Jersey. Defendant Gruma also, for purposes of this agreement was located in and doing business in Elizabeth, New Jersey. The agreement was negotiated, offered, signed by Albert McDonald, Gruma Area Sales Manager, with a stated business address at 475 Division Street, Elizabeth, New Jersey 07107. *See* SDDA at page 24 at Exhibit 1 to Complaint. The allegations set forth in the Complaint concern work done in New Jersey. The Plaintiffs were unlawfully terminated in New Jersey by the Defendant and/or its representatives. The Complaint involves allegations under the NJFPA and state and federal employment law. Indeed, the only nexus to Texas evident in the record, notwithstanding the Defendant's self-serving and wholly unsupported affirmation submitted in connection with their instant motion, is that Defendant

10

Gruma is headquartered in Texas. More importantly, for the reasons set forth herein, New Jersey policies related to the rights to a jury trial are constitutionally guaranteed to New Jersey citizens and critical to the case. *See, Nething v. Merck & Co.*, 2018 N.J. Super. Unpub. LEXIS 5541, *8 (Super. Ct, Law Div., Union Cty., August 16, 2018).

Thus the analysis is very straightforward – the application of the choice of law provision set forth in the agreement conflicts with and offends New Jersey public policy.  And this Court must apply New Jersey law to the instant motion to dismiss and compel arbitration because failure to do so will deny the Plaintiffs a right to a jury trial absent a clear and unambiguous waiver of same in the parties' agreement.

The whole of Defendant's caselaw and arguments set forth in their memorandum in support of the Motion do not deal with contractual provisions *that violate public policy* such as the case here.  Indeed, in this case, New Jersey law holds that the plaintiffs' purported agreement to arbitrate was not done knowingly or in a clear and unambiguous manners such that to require the Plaintiffs to arbitrate these claims would be void and in breach of New Jersey public policy – you cannot apply Texas law to analyze New Jersey law and public policy as Defendant would have this Court do.

Nor do the majority of cases referred to by Defendant involve, as this case does, (i) protections expressly afforded citizens under New Jersey law, (ii) with injury and causes of action *arising* in New Jersey, and (iii) New Jersey citizens seeking to enforce New Jersey law against acts and conduct by a foreign corporation.

Consequently, this Court should apply New Jersey law in its analysis of the Defendant's motion and deny the motion in its entirety on the grounds set forth more fully below.

**B.      THE NEW JERSEY CONSTITUTION GUARANTEES NEW JERSEY CITIZENS THE RIGHT TO A CIVIL JURY TRIAL**

The New Jersey Constitution guarantees the right to a civil jury trial. N.J. Const. Art., I, ¶ 9. New Jersey state-law jurisprudence makes clear "that when a contract contains a waiver of rights - whether in an arbitration or other clause-the waiver must be *clearly and unmistakably established*." *Atalese v. U.S. Legal Services Group, L.P.,* 219 N.J. 430, 443, 99 A.3d 306 (2014) (emphasis added).  Specifically, the New Jersey Supreme Court held in *Atalese* that "[t]he absence of any language in the arbitration provision that Plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable. An arbitration provision -- like any comparable contractual provision that provides for the surrendering of a constitutional or statutory right -- must be sufficiently clear to a reasonable consumer." *Id.* at 436.

No greater burden is placed on an arbitration agreement than other agreements waiving constitutional or statutory rights and state contract law principles must be applied. *Id.* (collecting non-arbitration-clause cases requiring clear and unambiguous contractual language to achieve waiver of rights).  However, the waiver language and agreement to arbitrate must be sufficiently clear so as to advise and notify the parties that they are relinquishing the right to a jury trial and to have a court of law hear any disputes arising from the agreement. *Id.*

Indeed, no "magical language" is required to accomplish a waiver of rights in an arbitration agreement. New Jersey has upheld arbitration clauses that have explained in various, simple ways, "that arbitration is a waiver of the right to bring suit in a judicial forum." *Id.* at 444. *See* also *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 81-82, 800 A.2d 872 (2002) (upholding arbitration clause stating that the party "waiv[ed] [her] right to a jury trial" and "all disputes

12

relating to [the party's] employment... shall be decided by an arbitrator"); *Curtis v. Cellco P'ship*, 413 N.J.Super. 26, 31, 992 A.2d 795 (App. Div.), *certif. denied*, 203 N.J. 94, 999 A.2d 462 (2010) (upholding arbitration agreement, which stated that parties "agree to settle disputes ... only by arbitration" and not by "suing in court" and explained that "rules in arbitration are different," "no judge or jury" is present, and "review is limited"); *Griffin v. Burlington Volkswagen, Inc.*, 411 N.J.Super. 515, 518, 988 A.2d 101 (App. Div. 2010) (enforcing arbitration clause stating that parties, by agreeing to arbitration, waived "their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes.").

In this case, the arbitration provision in the Gruma agreement falls *far* short of what is required to satisfy the existing New Jersey law. The arbitration provision does not explain that the Plaintiffs are waiving their rights to seek relief in Court at all. It doesn't mention court. Nor does the arbitration provision reference a waiver or relinquishment of a jury trial – in fact, the arbitration is altogether disjointed, confusing, conflicting (some claims may be litigated, i.e., claims for injunctive relief, class-claims) and even references a subparagraph, [15(h)(iii)], that is not in the agreement.

The SDDA arbitration provision states:

*15. (i) Arbitration.*

    *i. Injunctions.*

    *Subject to the disclaimer and waiver in Subsection 15(g), claims or causes of action solely for injunctive relief (and not joined to any claims for damages or monetary relief) may be sought in a court of law or by arbitration.*

    *ii. Non-Class Claims.*

    *Subject to the disclaimer and waiver in Subsection 15(g), the bar of claims older than two years in Subsection 15(h), and the conditional limitation in Subsection 15(h)(iii), any and all other claims and causes of action arising out of or relating to this Agreement (including, without limitation, matters relating to this Subsection 15(i) regarding arbitration, matters relating to*

*performance, breach, interpretation, meaning, construction, or enforceability of all or any part of this Agreement, and all claims for rescission or fraud in the inducement of this Agreement) shall be resolved by arbitration through J-A M S/Endispute ("JAMS") as provided in Subsection 15(i) (iii) below.*

### iii. _Class Claims._

*In the event that the parties' disclaimer and waiver in Subsection 15(g) of the right to assert class action claims and causes of action against one another is not legally enforceable, any and all claims and causes of action arising out of or relating to this Agreement (including, without limitation, matters relating to this Subsection 15(i) regarding arbitration, matters relating to performance, breach, interpretation, meaning, construction, or enforceability of all or any part of this Agreement, and all claims for rescission or fraud in the inducement of this Agreement) asserted as a class action under Federal Rule of Civil Procedure 23, any similar state statute or rule of judicial procedure, or any equivalent arbitration procedure shall be filed first in a court of law of competent jurisdiction (which shall be in Dallas County if the claims or causes of action involve in whole or in part one or more of the Company's Facilities located in Texas or a Company policy administered in whole or in part from the Company's headquarters in Texas; otherwise the court shall be located within the State and County where the affected Company's Facility is located). All proceedings prior to and including a decision as to whether the alleged class will be certified (including without limitation any decisions on discovery motions or motions for dismissal or summary judgment prior to a class certification hearing) shall be judicially determined by the court, and where applicable reviewed by the appellate court(s). Once a judicial decision has been made as to class certification, the claims and causes of action shall be referred to and resolved by arbitration through JA-MS/Endispute ("JAMS"), consistent with the judicial ruling(s) and decision(s) theretofore made.*

### iv. _Arbitration Procedures._

*All arbitration proceedings, once properly commenced, shall proceed pursuant to JAMS Streamlined Arbitration Rules and Procedures ("JAMS Streamlined Rules") or such other rules as JAMS may then decide are applicable. The parties have deliberately selected the JAMS Streamlined Rules because they contemplate a quick, inexpensive and binding resolution of their individual claims and business disputes while memories are fresh. Arbitration shall take place at the location (which shall be in Dallas County if the controversies, disputes, or claims involve in whole or in part one or more of the Company's Facilities located in Texas or a Company policy administered in whole or in part from the Company's headquarters in Texas; otherwise the location shall be within the State and County where the affected Company's Facility is located) and time set by JAMS, regardless of whether one side to the dispute or controversy fails or refuses to participate. The parties further agree that in any such proceeding they may seek and obtain discovery as permitted by applicable law, which applicable law is incorporated herein and the rights of the parties thereunder are subject to enforcement by JAMS. Said arbitration shall be conducted and subject to the provisions of applicable law, and the arbitrators) shall be entitled to grant any remedy or relief, subject to the limitations in Subsection 15(g), which a party would be entitled to receive under applicable law in a judicial proceeding. The fees of the arbitrator(s) shall be borne equally by Distributor and Company, unless the Distributor makes a sufficient in*

14

*forma pauperis showing that the Distributor cannot proceed unless the Company pays some or all of the Distributor's portion of the fees; any of the Distributor's portion of the fees of the arbitrator(s) which is paid by Company shall be awarded to Company as costs recoverable against the Distributor in the event Distributor does not prevail in the arbitration. In the event JAMS is not in existence at the time or location required hereunder, the arbitration shall be conducted before the American Arbitration Association ("AAA") pursuant to its rules for resolution of commercial disputes or other AAA applicable rules.*

<em>vi. <u>Judicial Review of Arbitration Award</u>.</em>

*In the event that the amount in controversy in arbitration exceeds $1 00,000, the parties shall have the right to have any arbitration award judicially reviewed by the courts of law as fully as would be allowed in the review of a decision of a master under Federal Rule of Civil Procedure 53, with findings of fact to be reviewed for clear error and issues of law to be decided de novo by the courts. In the event that the amount in controversy in arbitration is less than $100,000, the arbitration award shall be judicially reviewable by the courts of law under the law generally applicable to an arbitration award.*

[*See* Section 15(i) of the SDDA agreement, Complaint Exhibit 1].

As such, this provision lacks clear and unequivocal language that Plaintiffs are giving up their rights to pursue relief in a judicial forum. In fact, the language does not even mention anything about waiver of a judicial forum or jury, aside from the fact that it discusses, in overly legal terminology not readily understood by a lay person or a route distributor, that some claims may be brought in court but others, arguably, cannot. What does the foregoing even mean to the trained lawyer – it is clear as mud in its import on various grounds.

The language stating that "*any and all other claims and causes of action arising out of or relating to this Agreement (including, without limitation, matters relating to this Subsection 15(i) regarding arbitration, matters relating to performance, breach, interpretation, meaning, construction, or enforceability of all or any part of this Agreement, and all claims for rescission or fraud in the inducement of this Agreement)*" could easily be construed to be interpreted to relate to disagreements about the terms of the agreement only and nothing more. In other words, the SDDA's arbitration provision fails to sufficiently express that arbitration was a substitute for

15

having disputes and legal claims resolved before a judge or jury. *See, Nething v. Merck & Co.*,

2018 N.J. Super. Unpub. LEXIS 5541, *15-18. *Atalese v. U.S. Legal Services Group, L.P.*, 219

N.J. 430, 443, 99 A.3d 306 (2014) )("[t]he absence of any language in the arbitration provision

that Plaintiff was waiving her statutory right to seek relief in a court of law renders the provision

unenforceable").

Consequently, because the SDDA fails to state in any manner that the Plaintiffs were

waiving their rights to seek relief in court or to a jury trial this provision is unenforceable under

the public policy of the state of New Jersey.  The Defendant's motion therefore must be denied.

### C.   THE SDDA ARBITRATION PROVISION DOES NOT COVER THE PLAINTIFFS' STATUTORY CLAIMS

Arbitration's favored status does not mean that every arbitration clause, however phrased,

will be enforceable. *Hirsch v Amper Fin. Servs., LLC*, 215 NJ 174, 187, 71 A3d 849, 856 (2013)

("[T]he preference for arbitration 'is not without limits.") *quoting Garfinkel v. Morristown*

*Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 132, 773 A.2d 665 (2001).  Questions of

arbitrability, including challenges to an arbitration agreement's validity, are presumed to be

questions for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123

S. Ct. 588, 154 L. Ed. 2d 491 (2002)).  "Courts should not assume that the parties agreed to

arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)

(*quoting AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649,

106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).  "This is because the FAA places arbitration

agreements on 'an equal footing with other contracts' and thus, like any other contract, a Plaintiff

may bring a challenge to court claiming that an agreement to arbitrate is unenforceable based on

any of the 'generally applicable contract defenses, such as fraud, duress, or unconscionability ...."

*Quilloin v Tenet HealthSystem Phila., Inc.*, 673 F3d 221, 228-229 (3d Cir 2012) *quoting AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46, 179 L. Ed. 2d 742 (2011) (construing the FAA as codified at 9 U.S.C. § 2) (citation and internal quotation marks omitted).

In interpreting arbitration agreements, courts apply basic contract principles. *Singer v. Commodities Corp. (U.S.A.)*, 292 N.J. Super. 391, 402, 678 A.2d 1165 (App. Div. 1996). Generally, parties are free to contract terms of their own choosing. *Marchak v. Claridge Commons Inc.,* 134 N.J. 275, 281, 633 A.2d 531 (1993). A Court must enforce a contract that is clear and unambiguous as written, and extrinsic evidence outside the agreement may not be considered. *See Statewide Realty Company v. Fidelity Management and Research Company, Inc.*, 259 N.J. Super. 59, 68, 611 A.2d 158 (1992). Nor may the Court create a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. *Karl's Sales & Service*, 249 N.J. Super. 487, 493, 592 A.2d 647 (1991). When examining a contract and determining whether to compel arbitration in a specific matter, the court must decide first whether there is a valid agreement to arbitrate, and second, whether the dispute at issue falls within the scope of that agreement. *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990).

To cover a <u>statutory right</u> under New Jersey law, an arbitration clause must do three things. *See Easterday v Logistics LLC*, 2021 US Dist LEXIS 255394, at *23 [DNJ June 30, 2021, No. 15-7559 (RBK/AMD); *Nething v. Merck & Co.*, 2018 N.J. Super. Unpub. LEXIS 5541, *9-15. First, it must identify the general substantive area that the arbitration clause covers: "To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 773 A.2d 665

(2001); *see also Atalese v. U.S. Legal Services Group, L.P.,* 219 N.J. 430, 445, 99 A.3d 306

(2014) ("But the clause, at least in some general and sufficiently broad way, must explain that the

Plaintiff is giving up her right to bring her claims in court or have a jury resolve the

dispute."); *Martindale v. Sandvik, Inc.,* 173 N.J. 76, 800 A.2d 872 (2002) ("In the

circumstances of this case, the language in the arbitration agreement not only was clear and

unambiguous, it was also sufficiently broad to encompass reasonably Plaintiff's statutory causes

of action."); *Moon v. Breathless Inc.*, 868 F.3d 209 (3d Cir. 2017) (Third Circuit concluded that

an arbitration clause in an employment agreement did not cover the Plaintiff's statutory wage-and-

hour claims).

Second, it must reference the types of claims waived by the provision: "It should also

reflect the employee's general understanding of the type of claims included in the

waiver, *e.g.,* workplace discrimination claims." *Garfinkel v. Morristown Obstetrics & Gynecology*

*Assocs.,* 168 N.J. 124, 135, 773 A.2d 665 (2001). It need not, however, mention the specific

statutory rights at issue: "We do not suggest that the arbitration clause has to identify the specific

constitutional or statutory right guaranteeing a citizen access to the courts that is waived by

agreeing to arbitration." *Atalese v. U.S. Legal Services Group, L.P.,* 219 N.J. 430, 447, 99 A.3d

306 (2014).

Third, it must specifically explain the difference between arbitration and litigation: "The

waiver-of-rights language, however, must be clear and unambiguous - that is, the parties must

know that there is a distinction between resolving a dispute in arbitration and in a judicial forum."

*Id.* at 315; *see also Martindale v. Sandvik, Inc.,* 173 N.J. 76, 96, 800 A.2d 872 (2002); (enforcing

an arbitration clause because it, *inter alia,* "addressed specifically a waiver of the right to a jury

trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration").

The Supreme Court of New Jersey has interpreted three arbitration clauses to determine whether they covered a particular type of statutory claim. In Garfinkel and Atalese, the court found that the arbitration clause did not cover the Plaintiff's statutory claims. In *Martindale*, the Supreme Court of New Jersey came to the opposite conclusion but for distinguishable reasons.

In Garfinkel, a doctor employed by the Morristown Obstetrics and Gynecology Associates ("MOGA") sued MOGA for breaching an employment contract, tort, and for violating the New Jersey Law Against Discrimination ("LAD"). *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 773 A.2d 665 (2001). In response to the doctor's suit, MOGA invoked the following arbitration clause:

> *Except as otherwise expressly set forth in Paragraphs 14 or 15 hereof, any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association, and judgement [sic] upon any reward rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.*

*(Id.).*

The Court found that this arbitration clause did not cover the doctor's statutory claims for three reasons. First, the clause did not reference statutory claims: "Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD." *Id.* at 672. Second, the clause implicitly exempted all other statutory claims by explicitly exempting some: "As noted, paragraph eighteen excepts from its purview the two paragraphs of the agreement pertaining to post-termination restrictions and severance pay. Those exceptions further suggest that the parties intended disputes over the terms and conditions of the contract, not statutory claims, to be the subject of arbitration." *Id.* Third, the clause mentioned contract

disputes: "The clause states that 'any controversy or claim' that arises from the agreement or its

breach shall be settled by arbitration. That language suggests that the parties intended to arbitrate

only those disputes involving a contract term,  a condition of employment, or some other element

of the contract itself." *Id.*

In *Atalese,* a customer sued a debt-adjustment services company in New Jersey court for

violating New Jersey's Consumer Fraud Act and the Truth-in-Consumer Contract, Warranty and

Notice Act. The company relied upon the following arbitration clause of its service agreement:

> *In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party.*

[Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 437, 99 A.3d 306 (2014)].

The Court found that the consumer had not waived her statutory rights by signing this

arbitration provision because "the wording of the service agreement did not *clearly and*

*unambiguously* signal to Plaintiff that she was surrendering her right to pursue her statutory

claims in court." *Id.* at 316.

In Martindale, an employee sued her employer under New Jersey's Family Leave Act and

New Jersey's Law Against Discrimination.  The employer invoked the following arbitration

clause contained in an employment application:

> *As a condition of my employment, I agree to waive my right to a jury trial in any action or proceeding related to my employment with [the Employer]. I understand that I am waiving my right to a jury trial voluntarily and knowingly, and free from duress or coercion.*

[Martindale v. Sandvik, Inc., 173 N.J. 76, 81, 800 A.2d 872 (2002) (capitalization omitted)].

In *Martindale*, the Court found that the arbitration clause covered the employee's claims

for two reasons. First, the contract was sufficiently broad because, unlike in *Garfinkel* and other

cases, it did not make a limiting reference to a contract: "Unlike the arbitration provisions

20

contained in *Garfinkel* and *Atalese,* the arbitration provision here does not contain any limiting references." *Id.* at 96. Second, the Court concluded that the arbitration provision was appropriately clear because it specifically referenced the type of claims covered: "Its wording provided Plaintiff with sufficient notice at the time she signed the agreement that all claims relating to employment with and termination from [the Employer] would be resolved through arbitration." *Id.*

The facts in *Martindale* are readily distinguishable from this case. Just as in *Garfinkel* and *Atalese,* the language in the Gruma form SDDA does not *clearly and unambiguously* state that the parties were surrendering their rights to pursue statutory claims in court nor does the language address, <u>in any way</u>, claims that waives any claims that the Plaintiffs were employees entitled to statutory protections under wage and hour law and the anti-retaliation provisions under state and federal employment law. *See Easterday v Logistics LLC*, 2021 US Dist LEXIS 255394, at *23 [DNJ June 30, 2021, No. 15-7559 (RBK/AMD). Consequently, the provision is unclear and cannot be held to act as to waive the Plaintiffs right to pursue statutory claims or employment related claims in court.

Moreover, individual Plaintiffs Charles Adler and his son Grant Adler are not signatories to the SDDA and although they were working for Gruma and were wrongfully terminated by Gruma when Gruma terminated Plaintiffs and took the route, they are not bound by the SDDA in their individual capacities and certainly did not and could not have waived their statutory rights and protections afforded under New Jersey state and federal law under the SDDA.[3]

---

[3]      Because the test for employment status under the New Jersey wage laws presumes an employment relationship unless an employer can prove all of three points (lack of control, the work is outside the usual course of business or the worker has an independently established trade or business separate and apart from the company), it is likely that the Plaintiffs will prevail in their argument that they are employees. *See Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 465 (N.J. 2015).

The SDDA agreement is a Gruma form document – essentially an adhesive, take-it-or-leave-it contract that Gruma requires all distributors to sign without any ability to negotiate any of the terms therein at the time that the distributors purchased their routes from third parties. The Plaintiffs did not have a lawyer review the agreement nor did Gruma require as much. *See* Adler Decl at 19. In many respects, the fact that the agreement is so poorly drafted and difficult to understand – particularly if one is a route owner and not a lawyer, should be held against the draftsperson, Gruma and not in its favor as the multi-national corporation Goliath facing David, our Plaintiffs in this case.

Because the arbitration provision SDDA only references the agreement and disputes arising therefrom – and does not mention any statutory claims or claims relating to state franchise law, employment related claims and/or anti-retaliation claims, the Plaintiffs' claims in this action in large part fall outside the arbitration provision and Defendant cannot use this poorly worded agreement to prevent Plaintiffs from having their claims heard in court. Defendant's motion must be denied.

**D.     THE SDDA IS SUBSTANTIVELY UNCONSCIONABLE AS IT ALTERS AND LIMITS THE RIGHTS AND REMEDIES AVAILABLE TO THE PLAINTIFFS IN ARBITRATION**

Under the Restatement Second of Contracts, which has been applied in this District, a court may determine whether the terms of an arbitration agreement were unenforceable on grounds of unconscionability. *Parilla v IAP Worldwide Servs. VI, Inc.*, 368 F3d 269, 276-277 (3d Cir 2004). The relevant provision of the Restatement states:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

Restatement (Second) of Contracts § 208 (1981).

22

Courts have generally recognized that the doctrine of unconscionability involves both "procedural" and "substantive" elements. *Parilla, 368 F3d at 276.* Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. *Id.* This element is generally satisfied if the agreement constitutes a contract of adhesion. *Id.* "A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis. A contract, however, is not unconscionable merely because the parties to it are unequal in bargaining position. An adhesion contract is not necessarily unenforceable. The party challenging the contract therefore must also establish substantive unconscionability. This element refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." According to the commentary accompanying the Restatement (Second) of Contracts section 208:

> [G]ross inequality of bargaining power together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms.

[Restatement § 208 cmt. d.]. "In the end, unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Parilla v IAP Worldwide Servs. VI, Inc.*, 368 F3d 269, 276-277 (3d Cir 2004).

There can be no dispute that the SDDA Gruma agreement is a contract of adhesion. Plaintiffs had no ability to negotiate on terms of the take-it-or-leave-it distributorship. Turning to the issue of substantive unconscionability, the arbitration provision contains a section that alters and limits the rights and ability of Plaintiffs to recover in arbitration at section 15(i)(v) (see

above) – wherein the Defendant has inserted a provision stating "In the event that the amount in controversy in arbitration exceeds $1 00,000, the parties shall have the right to have any arbitration award judicially reviewed by the courts of law as fully as would be allowed in the review of a decision of a master under Federal Rule of Civil Procedure 53, with findings of fact to be reviewed for clear error and issues of law to be decided de novo by the courts." *See* SDDA at Complaint Exhibit 1.

The effect of this provision is to stunt the Plaintiff's claims in arbitration and make it that much more costly and ineffective and time consuming and harder to bring a meaningful challenge and claim against the Defendant corporation.  Indeed, in this case, the Defendant terminated the Plaintiffs without cause and literally took their route – a route that Plaintiff Adler had purchased in 2014 and the Defendant took without fair or reasonable compensation upon the unlawful termination in June 2022.   Defendant included this heavy-handed court review of an arbitration award under FRCP Rule 53 – which involves a greater standard of review of facts and *de novo* review of the law other than the straightforward, customary "abuse of discretion" confirmation standard of an arbitration award standard  – expressly in order to further insulate the Defendant corporation from any arbitration award and process and bankrupt the individual Plaintiff along the way.

In so doing, Defendant has altered and limited the relief that is available to Plaintiffs through the arbitration process set forth in the adhesive contract.  It is patently unfair and prejudicial and therefore unconscionable to allow this behemoth multinational corporation to throw up additional procedural and contractual roadblocks and legal processes to thwart the Plaintiffs ability to have meaningful claims heard and decided.   Consequently, the arbitration

provision, as limited to by section 15(i)(v) is inherently unconscionably and not enforceable and Defendant's motion must be denied on this basis.

### E.   THE FAA IS NOT APPLICABLE IN THIS CASE BECAUSE THE PLAINTIFFS ARE ENGAGED IN THE INTERSTATE TRANSPORTATION OF GOODS AND ARE THEREBY EXEMPT UNDER THE FAA

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") does not apply to transportation workers such as the Plaintiffs under the exemption set forth in Section 1 of the FAA. 9 U.S.C. § 1 (the FAA shall not apply to "…or any other class of workers engaged in foreign or interstate commerce"). *See generally* discussion in *Easterday v Logistics LLC*, 2021 US Dist LEXIS 255394, at *6 [DNJ June 30, 2021, No. 15-7559 (RBK/AMD)]).

Specifically, the FAA shall not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The United States Supreme Court has construed this section as exempting "from the FAA only contracts of employment of transportation workers." *Circuit City v. Adams*, 532 U.S. 105 at 119, 121 S. Ct. 1302 (2001). Recently, the Court has determined that a "contract of employment," as used in section one of the FAA, "referred to agreements to perform work," regardless of whether the relationship was characterized as a master-servant relationship or an independent contractor relationship. *New Prime, Inc. v. Oliveira*, 139 S. Ct 532, 542, 202 L. Ed. 2d 536 (2019). Thus, an agreement where the parties agree to provide transportation services on an interstate basis falls under section one of the FAA whether or not the agreement is to provide the services as an employee or as an independent contractor. *See Colon v Strategic Delivery Solutions, LLC,* 459 NJ Super 349, 358, 210 A3d 932, 938 (Super Ct App Div 2019).

In this case, the Plaintiffs were unquestionably engaged in the interstate transportation of food goods and other products produced by and on behalf of Defendant Gruma. *See generally*

25

Adler Decl. ¶¶ 10-12; 24.  Plaintiffs worked in New Jersey but received the Defendant's products shipped directly from a facility located in Pennsylvania – i.e., interstate commerce.  *See* SDDA, ¶ 1(c); Adler Decl. ¶ 26.  Plaintiffs drove trucks loaded with product from their warehouse to the individual Gruma accounts and made deliveries of food products, serviced the accounts, stocked shelves, and performed other work and services on the New Jersey route.  Adler Decl. ¶¶ 10-12; 24.  Consequently, they fall within the exception of the FAA applicable to interstate transportation workers.

Defendant's arguments therefore raising or relying upon the FAA as a basis to compel arbitration in this case are null and void and without the effect of law.  Likewise any argument that the FAA preempts any state law which is deemed to conflict with the FAA must be disregarded.  Therefore, this Court must find that the FAA does not compel arbitration in this matter nor can the FAA serve as a basis to preempt otherwise well grounded New Jersey law which provides certain rights and protections to the Plaintiffs under both the NJFPA and *Atalese* caselaw as set forth herein.

F.    **THE NJFPA PROHIBITS MANDATORY ARBITRATION CLAUSES**

Plaintiffs maintain that the relationship between Defendant Gruma and the Plaintiffs qualifies as that of franchisee-franchisor under the New Jersey Franchise Practices Act, N.J.S.A. 56:10 *et seq.* (NJFPA) and therefore the Plaintiffs are entitled to the rights and protections afforded New Jersey franchisees – irrespective of what the SDDA calls the relationship between these parties.

The NJFPA specifically prohibits, *inter alia*, mandatory arbitration clauses in motor vehicle franchise agreements, N.J.S.A. 56:10-7.3(a)(3), and provides a presumption against enforcement of such clauses:

> For the purposes of this section, it shall be presumed that a motor vehicle franchisee has been required to agree to a term or condition in violation of this section as a condition of the offer, grant or renewal of a franchise or of any lease or agreement ancillary or collateral to a franchise, if the motor vehicle franchisee, at the time of the offer, grant or renewal of the franchise, lease or agreement is not offered the option of an identical franchise, lease or agreement without the term or condition proscribed by this section.

[ N.J.S.A. 56:10-7.3(b).]

The Supreme Court of New Jersey has held that this prohibition extends to all franchise agreements as follows:

> [F]orum-selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position. Evidence that the forum-selection clause was included as part of the standard franchise agreement, without more, is insufficient to overcome the presumption of invalidity.

*Kubis Perszyk Assocs. v. Sun Microsystems, Inc.*, 146 N.J. 176 , 195, 680 A.2d 618 (1996).

Although the FAA would otherwise preempt the application of *Kubis*, as discussed above, in this case, the Plaintiffs are exempt from the application of the FAA and there is no preemption of the state law, or the NJFPA.  Thus, this Court must give the NJFPA its full application to the facts in this case and hold that New Jersey state law expressly precludes and voids any attempt by a franchisor to compel arbitration pursuant to a so-called mandatory arbitration provision.

Based upon all of the foregoing, the Defendant's motion to dismiss and compel arbitration must be denied.

## CONCLUSION

For all of the foregoing reasons, this Court must deny the Defendant's motion to dismiss and compel arbitration and issue an Order awarding Plaintiffs the fees, costs and expenses associated with this motion and any and all other relief that the Court deems appropriate and/or necessary.

27

Dated: White Plains, New York
      March 20, 2023

                        BLEAKLEY PLATT & SCHMIDT, LLP

                  By: s/ Lino J. Sciaretta
                     Lino J. Sciaretta, Esq.
                     Stephen J. Brown, Esq.
                     Susan E. Galvão, Esq.
                     Attorneys for Plaintiffs
                     One North Lexington Avenue, 4th Floor
                     White Plains, New York  10601
                     (914) 287-6191
                     lsciaretta@bpslaw.com
                     sbrown@bpslaw.com
                     sgalvao@bpslaw.com

TO : Richard J. Reibstein, Esq.
     LORD LOCKE LLP
     *Attorneys For Defendant Gruma Corporation*
     *d/b/a Mission Foods and Guerrero Mexican Food Products*
     One Gateway Center
     26th Floor, Suite 18
     Newark, NJ  07102
     (973) 520-2300
     rreibstein@lockelord.com
     cfontenelli@locklord.com

CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2023, the Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss and to Compel Arbitration was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and the United States District Court for the District of New Jersey's Local Rules upon the following party(ies):

Richard J. Reibstein, Esq.
LORD LOCKE LLP
*Attorneys For Defendant Gruma Corporation*
*d/b/a Mission Foods and Guerrero Mexican Food Products*
One Gateway Center
26th Floor, Suite 18
Newark, NJ  07102
(973) 520-2300
rreibstein@lockelord.com

By: s/ Lina J. Sciaretta

29