UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

----------------------------------------------------------------X

CHARLES L. ADLER, GRANT ADLER, and C.M. ADLER, LLC,

Plaintiffs,

- against -

GRUMA CORPORATION, D/B/A MISSION FOODS, GUERRERO MEXICAN FOOD PRODUCTS, ETC.

Defendants.

----------------------------------------------------------------X

Civil Action No.: 22-cv-06598

*Electronically Filed*

**DECLARATION**

I, CHARLES L. ADLER, do hereby declare and affirm under the penalties of perjury as follows:

1. I am over the age of 18 years old and a resident of Eatontown, New Jersey. I am one of the plaintiffs in the above-referenced action. The facts and circumstances stated herein are based upon my personal knowledge.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss and Compel Arbitration.

3. I attended Jackson Memorial High School located in Jackson, New Jersey.

4. I attended 1.5 years of college but did not earn an advanced degree.

5. From 2014 to June 2022, I worked for defendant Gruma Corporation ("Gruma") in New Jersey as a direct store distributor or "DSD" distributor and owner.

6. I am the sole owner of C.M. Adler, LLC, which is also a plaintiff in this action. C.M. Adler, LLC is a New Jersey limited liability company and I formed this LLC in 2014. This

entity was formed for the express purpose of obtaining a distributor route with defendant Gruma Corporation.

7. I purchased the Gruma route in 2014 from a Gruma distributor who was based in New Jersey.

8. I worked for Gruma full time from 2014 to June 2022, when I was terminated by Gruma "without cause" and they took my route from me.

9. My son Grant Adler is also a plaintiff in this case and he worked with me on the Gruma route from approximately 2016 to June 2022, when he was also terminated.

10. The Gruma route that I worked on and operated was based in and around Trenton, New Jersey.

11. I maintained a warehouse at 825 Brook Road, Lakewood, New Jersey 07701 from approximately 2017 to 2022 for purposes of operating the Gruma route, including but not limited to receiving Gruma product deliveries, storing Gruma products and transportation and making deliveries to Gruma accounts.

12. Prior to the warehouse in Lakewood, New Jersey, I maintained a warehouse in Toms River, New Jersey from 2014 to approximately 2017.

13. At the time I was terminated in June 2022, the Gruma Vice President that oversaw my route was Shawn Conlon, who is based out of Brick, New Jersey.

14. In June 2022, the Gruma District Area Manager that was responsible for my route was Robert Frazier. Mr. Frazier was based out of Elizabeth, New Jersey.

15. During all times relevant to this action, Gruma has maintained and still maintains a warehouse and distribution center in Elizabeth, New Jersey. This facility in Elizabeth is where the Gruma employees and representatives that worked and oversaw my route were based and/or

operated out of.

16. In 2014, when I purchased the Gruma route and began working for the company, I dealt with Gruma representatives located in Elizabeth, New Jersey.

17. At that time in 2014, I executed the Gruma Store Door Distributor Agreement ("SDDA") on behalf of my LLC, C.M. Adler, LLC.

18. Shawn Conlon, who at the time was the Gruma District Manager out of Elizabeth, New Jersey, presented me with the SDDA and related documents to sign at the Lakewood, New Jersey warehouse and I signed these documents without any negotiations or modifications to the documents themselves. It was take it or leave it.

19. At the time I executed the SDDA with Gruma, I was not represented by counsel nor did I have the SDDA reviewed by counsel.

20. The terms of the SDDA were not explained to me by anyone at Gruma. At no time was it explained to me that SDDA contained an arbitration provision nor did I have any independent knowledge as to what claims may or may not be subject to arbitration.

21. I did not understand at the time that I signed the SDDA that I might be waiving my right to commence an action in court or that I might be waiving my right to a jury trial.

22. In fact, at the time I was given the SDDA to sign, I was told by Mr. Conlon that this was "the basic contract".

23. Mr. Conlon presented me with the paperwork that I had to sign and I handed him a deposit check. We were standing outside of the warehouse in Lakewood, New Jersey. Prior to that meeting, I was not provided with a copy of the SDDA to review or otherwise consult with counsel.

24. As a Gruma distributor, I was responsible for servicing and maintaining Gruma

accounts within my set demographic in and around Trenton, New Jersey. As part of this work, I would place product orders on the Gruma handheld computer and I would receive shipments of Gruma product to the above-mentioned warehouses. I would, together with my son, receive these shipments and load the Gruma product on to my trucks. At which point, I would transport the product to the Gruma accounts and I would makes sales, service and maintain the accounts and unload the product from the trucks and put them on the account shelves and displays. I was generally responsible for making deliveries, sales, and stocking shelves as well as removing stale product and keeping up the relationships within the accounts. I would also sell displays and present sale items to accounts as designated by Gruma.

25. A large component of what I did while working for Gruma involved the transportation of goods and product.

26. I received Gruma product from the Gruma facility located in Mountaintop, Pennsylvania.

27. I was required by Gruma to carry workers' compensation insurance and had to provide Gruma with a certificate of insurance evidencing same.

28. Gruma required that I carry general liability insurance and insurance on the trucks in amounts established by Gruma.

29. Although Gruma has produced purported copies of 1099s evidencing payments to CM Adler, LLC, the 1099s do not reflect any expenses or costs that were required by Gruma or incurred in the operation of the route, including but not limited to uniforms, insurance, truck expenses, gas, tolls, stale product, and other such costs and deductions.

30. In or around May, 2022, as a result of numerous issues relating to unfair pricing, heavy handed treatment and potentially unlawful conduct by Gruma against its distributors, a meeting was held at my warehouse in Lakewood, New Jersey with legal counsel in an effort to obtain advise concerning our legal rights, options and potential remedies with and against Gruma.

31. These issues included but were not limited to certain work conditions, unilateral pricing changes, and compensation that me and my fellow distributors working at Gruma were facing.

32. My son Grant Adler attended this meeting. The meeting was held at our warehouse in Lakewood, New Jersey.

33. I subsequently learned that Gruma somehow learned of this meeting and its organizers and attendees.

34. As a result of my involvement in this meeting, which occurred at my warehouse in Lakewood, New Jersey, I was notified that I was to be terminated by Gruma via letter dated May 9, 2022, purportedly "without cause".

35. I learned that four other distributors who were involved in this meeting with counsel were similarly terminated.

36. I was terminated on June 12, 2022 by Gruma and they took my route without fair compensation.

37. The facts and circumstances giving rise to the claims in the Complaint occurred in New Jersey.

38. The facts and allegations set forth in the Complaint are true and accurate.

39. I declare under penalty of perjury that the foregoing is true and correct.

Executed at White Plains, New York on this 20th day of March, 2023.

*[signature]*
CHARLES ADLER

Sworn to before me this
20th day of March, 2023

*[signature]*
Notary Public

MAUREEN HUGHES
Notary Public, State of New York
No. 01HU6140115
Qualified in Westchester County
Commission Expires January 17, 2026