**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES L. ADLER, GRANT ADLER, and C. M. ADLER, LLC, | |
| Plaintiffs, | Civil Action No. 22-06598 (RK) (JBD) |
| v. | **OPINION** |
| GRUMA CORPORATION D/B/A MISSION FOODS and GUERRERO MEXICAN FOOD PRODUCTS, ETC., | |
| Defendant. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on a Motion to Dismiss and Compel Arbitration filed by Defendant Gruma Corporation d/b/a Mission Foods and Guerrero Mexican Food Products ("Defendant"). (ECF No. 7.)[1] The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss and Compel Arbitration is **GRANTED**, and Plaintiffs' Complaint is hereby **DISMISSED** to be resolved through arbitration.

## I.    BACKGROUND

This action arises out of an agreement between Defendant and Charles L. Adler, Grant Adler, and Charles L. Adler's solely owned company, C.M. Adler, LLC (collectively, "Plaintiffs")

---

[1] Although two separate parties were docketed as defendants in this matter, this appears to have been error. The parties refer to a single Defendant, Gruma Corporation, which does business under two different trade names, Mission Foods and Guerrero Mexican Food Products, Etc. The Court therefore refers to Defendant in the singular.

to distribute Gruma products. ("Compl.," ECF 1 ¶ 1.) Defendant, which is incorporated in Nevada and headquartered in Texas, is the world's largest manufacturer of tortillas, distributing tortillas and other food products throughout the United States. (*Id.* ¶¶ 2, 18.) Defendant distributes its products using an "independent distributor model." (*Id.* ¶ 5.) Under this model, Defendant enters into a Store Door Distribution Agreement ("SDDA") with each of its distributors. (*Id.*) C.M. Adler is one of Defendant's independent distributors, distributing Gruma products to "various large and small retail and corporate accounts within an assigned territorial region in New Jersey." (*Id.* ¶ 1.)

Plaintiffs allege that Defendant has misclassified them as independent contractors. (*Id.* ¶ 21.) They allege that they are in fact franchisees of Defendant because the SDDA gives them a license to use, market, and sell Gruma products, brands, and tradenames. (*Id.* ¶ 27.) Plaintiffs also allege that they are employees of Gruma because Defendant "oversees and dictates virtually every aspect" of Plaintiffs' work. (*Id.* ¶¶ 21, 23.) Plaintiffs argue that, by misclassifying Plaintiffs as independent contractors, Defendant has knowingly and intentionally deprived Plaintiffs of the benefits, privileges, and protections available to franchisees and employees. (*Id.* ¶ 21.) As a result, Plaintiffs have been subjected to "improper and illegal deductions from wages and/or illegal deductions by separate transactions" and have been forced to bear significant costs and expenses associated with performing their duties on behalf of Defendant. (*Id.* ¶¶ 22, 31–32.)

In early May 2022, Plaintiffs and several other Gruma distributors decided to consult with legal counsel "to discuss the distributors' rights, as related to Gruma and its actions, including but not limited to what rights the distributors had under the SDDA and applicable law." (*Id.* ¶ 61.) Plaintiffs scheduled a meeting with legal counsel for May 9, 2022 at Plaintiffs' warehouse in New Jersey. (*Id.* ¶ 62.) Several confidential email communications were circulated among Gruma distributors announcing the meeting. (*Id.* ¶ 64.) However, one or more of these emails were

disclosed to Defendant's representatives. (*Id.* ¶ 65.) Immediately thereafter, Defendant terminated Plaintiffs and the other "leaders" of the group. (*Id.* ¶ 67.) Plaintiffs allege that coordinating with other distributors and consulting with legal counsel constituted protected activity under the Fair Labor Standards Act ("FLSA") and state law and that their termination was unlawful and retaliatory. (*Id.* ¶¶ 66, 68–70.)

On November 14, 2022, Plaintiffs filed this action, bringing fourteen (14) claims under federal and New Jersey law: (1) failure to pay minimum or any wages in violation of the FLSA (2) failure to pay overtime in violation of the FLSA; (3) failure to pay wages and improper deductions and withholdings from wages in violation of the New Jersey Wage Payment Law ("NJWPL"); (4) failure to pay minimum wages and overtime wages in violation of the NJWPL; (5) improper deductions from wages and failure to reimburse expenses in violation of the NJWPL and FLSA; (6) improper demands for "kick-back" of wages in violation of the NJWPL, NJWHL, and FLSA;[2] (7) failure to provide notices required by NJWPL and NJWHL; (8) retaliation in violation of the FLSA; (9) retaliation in violation of NJWPL and NJWHL; (10) recission; (11) unjust enrichment; (12) declaratory judgment; (13) violation of the New Jersey Franchise Practices Act ("NJFPA"); and (14) violation of the breach of the covenant of good faith and fair dealing. (Compl. ¶¶ 79–198.) Plaintiffs attached a copy of the SDDA as an exhibit to the Complaint. (Compl., Ex. 1.)

On February 13, 2023, Defendant filed the Motion to Dismiss and Compel Arbitration now pending before the Court. (ECF No. 7-1.) The SDDA executed between Plaintiffs and Defendant contains an arbitration provision. (Compl. ¶¶ 17, 34.) Defendant contends that the SDDA's

---

[2] Count VI of Plaintiffs' Complaint says "IMPROPER DEMANDS FOR "KICK-BACK" OF WAGES IN VIOLATION OF NYLL § 193, 198 . . . [and] THE FLSA . . . ." (Compl. at 32.) Later in this section, Plaintiffs refer to the NJWPL, NJWHL, and FLSA. (*Id.* at 33.) The Court therefore presumes that the reference to NYLL is a typographical error and that Plaintiffs do not intend to bring a claim under New York's labor laws.

arbitration provision is valid and compels arbitration of this matter under the laws set forth in the SDDA's choice of law provision, which designates Texas law and, if needed, the Federal Arbitration Act ("FAA") as the laws governing the agreement. (ECF No. 7-1 at 1–2.) Plaintiffs respond that this case is properly before the Court because the SDDA should be governed by New Jersey law, notwithstanding the agreement's choice of law provision, and that, under New Jersey law, the arbitration provision is unenforceable. (ECF No. 13 at 6–7.)

## II.    LEGAL STANDARD

A motion to compel arbitration can be considered pursuant to either the motion to dismiss standard found in Federal Rule of Civil Procedure 12(b)(6) or the summary judgment standard found in Federal Rule of Civil Procedure 56. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774–76 (3d Cir. 2013). "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint," that some of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776 (quotation marks and citation omitted). However, the Rule 12(b)(6) standard is not appropriate where either "[1] the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or [2] the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at 774. "If either of those scenarios is in play, the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Id.*

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal, it

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   DISCUSSION

At the outset, the Court finds that it can resolve the question of the arbitration provision's enforceability from the Complaint and its exhibits. Plaintiffs attached the SDDA to the Complaint and reference the SDDA over sixty (60) times throughout the Complaint. The Court therefore considers Defendant's motion pursuant to the Rule 12(b)(6) standard.[3]

The Court now turns to the parties' arguments. The Court will first address which state's law governs the SDDA. Next, the Court will address whether the SDDA's arbitration clause is enforceable under the law of that state.

### a.   CHOICE OF LAW

The threshold issue the Court must resolve is whether the Court should apply Texas or New Jersey law. Subsection 15(k) of the SDDA contains a choice of law provision that provides that the SDDA shall be governed by Texas law and, as needed, federal law:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The Federal Arbitration Act, 9 U.S.C. § 1 et seq. shall also apply as needed to uphold the validity or enforceability of the arbitration provisions of this Agreement.

(Compl., Ex. 1 at *24.)

---

[3] Courts in the Third Circuit have found discovery appropriate in cases where the complaint makes no reference to an agreement between the parties, does not attach the agreement as an exhibit, and it does not base its claim on the existence of an agreement. *See, e.g.*, *Ross v. CACH, LLC*, No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015); *Golden Gate Nat. Seniorcare, LLC v. Lane*, No. 14-1957, 2015 WL 926432, at *6 (M.D. Pa. Mar. 4, 2015); *GGNSC Equity Holdings v. Breslin*, No. 14-450, 2014 WL 5463856, at *6 (M.D. Pa. Oct. 27, 2014).

In its Motion to Dismiss and Compel Arbitration, Defendant argues that the SDDA's arbitration provisions should be governed by the law negotiated by the parties. (ECF No. 7-1 at 11–15.) Plaintiffs, however, argue that New Jersey law should apply because the SDDA's choice of law provision violates New Jersey public policy. (ECF No. 13 at 7–11.)

"In a case based on federal question jurisdiction where a court is exercising supplemental jurisdiction over state law claims, the federal court applies the choice of law rules of the forum state." *Carlton v. Choicepoint, Inc.*, No. 08-5779, 2009 WL 4127546, at *5 (D.N.J. Nov. 23, 2009); *see also Riffin v. Consol. Rail Corp.*, 363 F. Supp. 3d 569, 575 (E.D. Pa.), *aff'd*, 783 F. App'x 246 (3d Cir. 2019). The Court therefore applies New Jersey's choice-of-law rules to determine which state's law governs the SDDA. "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992); *see also General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing *Instructional Sys., Inc.*, 614 A.2d at 133). Under this formulation, the law of the state chosen by the parties—in this case, Texas—will govern unless one of the following exceptions applies:

  (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
  (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Instructional Sys., Inc.*, 614 A.2d at 133 (quoting Restatement (Second) of Conflicts of Laws § 187 (1969).

The exception found in subsection (a) of the Restatement test does not apply in this case because Defendant is headquartered in Texas. Thus, Texas, the chosen state, has a substantial

relationship to the parties or transaction. *See SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 439 (E.D. Pa. 2014) ("It is well-settled that when a corporation has a principal place of business within a state, that state bears a substantial relationship to the parties." (citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 56 (3d Cir. 1994))); *Instructional Sys., Inc.*, 614 A.2d at 133 ("[Defendant] is headquartered in California, and hence California law has a 'substantial relationship to the parties.'").

The Court must therefore determine whether the exception found in subsection (b) of the Restatement test applies. Courts in this district have explained that the subsection (b) inquiry has three parts. In order for the Court to determine that this exception applies, the Court must find the following three elements: (1) New Jersey has a materially greater interest than Texas in the outcome of this dispute; (2) application of Texas law would be contrary to a fundamental public policy of New Jersey; and (3) absent a valid and enforceable choice of law clause, New Jersey law would apply. *See Howmedica Osteonics Corp. v. Howard*, No. 19-19254, 2022 WL 16362464, at *6 (D.N.J. Oct. 28, 2022) (citing *Diversant, LLC v. Carino*, Civ. No. 18-3155, 2018 WL 1610957 at *3 (D.N.J. Apr. 2, 2018)); *see also Rosenberg v. Hotel Connections, Inc.*, No. 21-4876, 2022 WL 7534445, at *4 (D.N.J. Oct. 13, 2022). Where the first element has not been established, the Court need not reach the second and third elements. *Howmedica Osteonics Corp.*, 2022 WL 16362464, at *8 (citing *Diversant, LLC*, 2018 WL 1610957, at *4).

The Court begins with the first element: whether New Jersey has a materially greater interest than Texas in the outcome of this dispute. "New Jersey Courts focus on the dispute-related contacts or relationships with the relevant states to determine which state has a materially greater interest." *Rosenberg*, 2022 WL 7534445, at *4 (D.N.J. Oct. 13, 2022) (citations omitted). As for New Jersey's contacts, Plaintiffs explain that "New Jersey is . . . where Plaintiffs work, reside and

ran their Gruma route and maintained their warehouse to receive, store, distribute[,] and sell Gruma

products." (ECF No. 13 at 1.) Plaintiffs also contend that this case involves "(i) protections

expressly afforded citizens under New Jersey law, (ii) with injury and causes of action arising in

New Jersey, and (iii) New Jersey citizens seeking to enforce New Jersey law against acts and

conduct by a foreign corporation." (*Id.* at 11.) Defendant, however, explains that Texas is where

Gruma maintains its corporate headquarters and where its "business affairs in the United States

are centered, especially as it relates to independent distributors like [Plaintiffs]." (ECF No. 7-1 at

7).[4]

The Third Circuit has upheld choice of law provisions based on the materially greater

interest test where, as here, the provision designates the law of the state in which one of the parties

is headquartered or incorporated. For example, in *Coface Collections N.A. Inc. v. Newton*, the

Third Circuit considered a case where the plaintiff, a national company incorporated in Delaware,

sought to enforce a choice of law provision that designated Delaware law. 430 F. App'x 162, 163–

64 (3d Cir. 2011). The defendants, who lived, worked, and executed the agreement in Louisiana,

argued that Louisiana law should govern instead. *Id.* The Third Circuit rejected the defendants'

argument, finding that the defendants' geographic ties did not lead to the conclusion that Louisiana

had a materially greater interest than Delaware. *Id.* at 167–68. Courts in the Third Circuit have

---

[4] Specifically, Defendant explains that Texas is where Gruma performs the following business activities pertaining to this lawsuit: "developed its policy and practice of designating distributors as independent contractors; coordinates and carries out the process of drafting and enforcing SDDAs with independent distributors . . . ; coordinates the purchase and distribution of its products by independent distributors; employs its senior leadership staff, finance employees, and its senior operation employees, and manages those employees that interact with independent distributors . . . ; creates and maintains customer relationships with customers to which independent distributors distribute its products; determines prices for its products purchased by independent distributors; employs its technical team that assists with issues related to the independent distributors' use of [Gruma computers] . . . ; coordinates logistical efforts for utilizing third-party carriers that are responsible for delivering product to the warehouses of independent distributors (like [Plaintiffs]) . . . ; and remits payment to independent distributors . . . and sends yearly Form 1099s to such distributors." (ECF No. 7-1 at 7–8.)

also observed that, for the materially greater interest test, "a company's connection to a state is greater when it is headquartered there." *SKF USA Inc.*, 992 F. Supp. 2d at 439 (collecting cases).

Numerous courts in this district have also upheld choice of law provisions where one party works and resides in one state and the other party is headquartered or incorporated in the other state. Courts have explained that, in these cases, neither state has a materially greater interest than the other that would overcome the parties' choice of law provision. For example, in *Chemetall US Inc. v. Laflamme*, the Honorable Jose L. Linares determined that Indiana's interest in a trade secrets dispute was not materially greater than that of New Jersey (the state of the parties' contractually agreed to law). No. 16-780, 2016 WL 885309, at *8 (D.N.J. Mar. 8, 2016). In that case, the defendant was an Indiana resident who worked in Indiana, serviced Indiana-based customers, and received and executed the relevant agreement in Indiana. *Id.* at *7. The defendant argued that, based on these contacts, Indiana law should apply instead of New Jersey law. However, Judge Linares rejected the defendant's argument because the plaintiff was headquartered in New Jersey and New Jersey had an interest in enforcing its company's rights, in enforcing covenants reasonably designed to protect the interests of its residents, and in protecting the confidential information of its residents. *Id.* at *8. Having found that Indiana did not have a materially greater interest than New Jersey, Judge Linares upheld the choice of law provision and found it unnecessary to proceed to the second and third elements of the subsection (b) analysis.

Likewise, in *Diversant LLC*, the Honorable Anne E. Thompson determined that New Jersey law—the law selected by the parties in their choice of law provision—governed a dispute in which the plaintiff was headquartered in New Jersey, the plaintiff negotiated, prepared, and executed the agreement in New Jersey, the plaintiff substantially performed the agreement at its corporate offices in New Jersey, and the cloud storage platform accessed by the defendant in

connection with his job was maintained in New Jersey. 2018 WL 1610957, at *3–4. The defendant argued that California law should apply instead of the law of the parties' chosen state because the defendant was a California resident who signed and performed the contract exclusively in California and managed a book of business entirely comprised of California clients. *Id.* Judge Thomspon found that California's interest was not materially greater than that of New Jersey, upheld the choice of law provision designating New Jersey law, and did not proceed to the second and third elements of the analysis.

In *Rosenberg*, the Honorable Zahid N. Quraishi applied the law of the parties' chosen state even where *both* parties resided and were headquartered in a different state. In *Rosenberg*, Judge Quraishi considered whether to apply New Jersey or New York law to an arbitration provision contained in the parties' employment contract. 2022 WL 7534445, at *4. The plaintiff argued that New Jersey law should apply because the plaintiff was a citizen of New Jersey, he negotiated and signed the agreement in New Jersey, he worked in New Jersey, Defendant's headquarters were located in New Jersey, and the plaintiff brought claims under New Jersey law. *Id.* However, Judge Quraishi nonetheless applied New York law—the law designated in the parties' choice of law provision. *Id.* at *5. Judge Quraishi explained that, while New Jersey had a substantial interest in the dispute, its interest was not materially greater than that of New York because the parties agreed to apply New York law, Defendant was incorporated in New York, and Defendant conducted business in New York. *Id.* at *5. Like Judges Linares and Thompson, Judge Quraishi upheld the parties' choice of law provision and declined to proceed to the second and third elements of the analysis. *Id.*

As in the above-mentioned cases, the Court finds that Plaintiffs here have failed to establish that New Jersey's interest in this action is materially greater than that of Texas. At the outset, the

Court notes that Plaintiffs failed to cite or address the Restatement test. Rather, Plaintiffs' brief focuses on whether the parties' contractually chosen law violates New Jersey's public policy. However, "[i]t is not enough to assert that [New Jersey] has a greater interest simply because the application of [Texas] law runs contrary to a fundamental [New Jersey] policy." *SKF USA Inc.*, 992 F. Supp. at 441. The fact that Plaintiffs are residents of New Jersey and performed work under the SDDA in New Jersey does not necessarily establish that New Jersey has a materially greater interest than Texas. The parties negotiated and agreed to apply Texas law, Defendant is headquartered in Texas, and Defendant's business affairs pertaining to its contractual relationship with Plaintiffs are performed at its corporate offices in Texas. Texas, therefore, has an interest in enforcing its company's rights. While New Jersey has an interest in this matter, its interest is not materially greater than that of Texas as to overcome the parties' choice of law provision. The Court therefore need not proceed to the second and third elements of the analysis under subsection (b) of the Restatement test.

However, even if the Court were to reach the second element, it would find that Plaintiffs have not shown that enforcement of the provision would violate New Jersey public policy. Plaintiffs argue that the arbitration provision is unenforceable because New Jersey courts "have held that allowing residents employed within the state to waive the statutory protections of the [New Jersey Law Against Discrimination ("NJLAD")] would be 'contrary to the public policy' goal expressed in the NJLAD – 'the elimination of discrimination.'" (ECF No. 13 at 10 (citations omitted)). The Court is not persuaded. Plaintiffs are correct that courts in New Jersey have held that an employment agreement's choice of law provision cannot be read to prevent an employee from bringing claims under the NJLAD. *See Rockware v. ETZ Hayim Holding*, Inc., No. 20-4389, 2020 WL 7640917, at *2 (D.N.J. Dec. 23, 2020). However, Plaintiffs are not bringing claims under

11

the NJLAD.[5] Moreover, even if this principle applied to Plaintiffs' other claims under New Jersey

law, Plaintiffs' argument misses the mark.

Defendant does not argue that the choice of law provision in the SDDA prevents Plaintiffs

from bringing their claims under New Jersey law. Indeed, in its reply brief, Defendant clarifies

that their Motion does *not* seek to preclude Plaintiffs from asserting any statutory claims under

New Jersey law. (ECF No. 15 at 7 ("Gruma has not asserted in this motion that any New Jersey

statutory rights Plaintiffs have asserted under the state's wage and hour laws or franchise practices

law are in any manner waived or otherwise unavailable for Plaintiffs to assert in arbitration, by

virtue of the Texas choice of law provision.").) Defendant merely argues that Texas law requires

Plaintiffs to *arbitrate* their claims, rather than litigating them in court.[6] The fact that the arbitration

clause may require Plaintiffs to arbitrate their statutory claims is "of no moment." *Rockware*, 2020

WL 7640917 at *3.

Therefore, even if the Court were to consider Plaintiffs' public policy arguments, the Court

nonetheless finds that the second element of the inquiry under subsection (b) of the Restatement

test militates in favor of upholding the SDDA's choice of law provision. Accordingly, the Court

---

[5] Plaintiffs also cite two cases involving employment discrimination claims for the proposition that "New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination (NJLAD) and other types of claims." (ECF No. 13 at 9 (citing *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008) and *McDonnell v. Illinois*, 319 N.J. Super. 324 (N.J. Super. Ct. App. Div. 1999)). The Courts finds the subject case distinguishable from the cited cases for two reasons. First, as noted above, this is not a discrimination case under the NJLAD. Second, and more critically, neither of the cited cases involved contractually-agreed-upon choice of law provisions.

[6] The Honorable Michael A. Shipp rejected the same argument in *Rockware v. ETZ Hayim Holding*. In that case, the plaintiff argued that enforcing the choice of law provision applying Washington state law to interpret an arbitration provision would preclude the plaintiff from asserting his NJLAD claims. 2020 WL 7640917 at *1–2. Judge Shipp reasoned that the defendant's motion to dismiss and compel arbitration did not argue that enforcing the choice of law provision would prevent plaintiff from *bringing* his NJLAD claims; rather, enforcement of the provision would simply require the plaintiff to *arbitrate* his NJLAD claims. *Id.* Judge Shipp concluded that "[e]ven when considering NJLAD employment claims, New Jersey courts generally construe an arbitration clause within an applicable employment agreement in accordance with any choice of law provision contained therein." *Id.* at *3.

finds it unnecessary to proceed to the third element of the inquiry. Accordingly, Texas law applies

to the SDDA, and the Court will apply Texas law to determine whether the SDDA's arbitration

provision is enforceable.

### b. ENFORCEABILITY OF THE ARBITRATION PROVISION

Next, the Court turns to the enforceability of the arbitration provision. The SDDA contains

an arbitration clause. The arbitration provision for claims that are not class action claims is found

in Subsection 15(i):

> . . . [A]ny and all other claims and causes of action arising out of or relating to this
> Agreement (including, without limitation, matters relating to this Subsection 15(i)
> regarding arbitration, matters relating to performance, breach, interpretation,
> meaning, construction, or enforceability of all or any part of this Agreement, and
> all claims for rescission or fraud in the inducement of this Agreement) shall be
> resolved by arbitration through J.A.M.S/Endispute ("JAMS") as provided in
> Subsection 15(i)[(iv)] below.

(Compl., Ex. 1 at *22.) This Subsection also adopts the procedures through which the parties must

arbitrate, namely the JAMS Streamlined Rules and Procedures:

> All arbitration proceedings, once properly commenced, shall proceed pursuant to
> JAMS Streamlined Arbitration Rules and Procedures ("JAMS Streamlined Rules")
> or such other rules as JAMS may then decide are applicable. The parties have
> deliberately selected the JAMS Streamlined Rules because they contemplate a
> quick, inexpensive and binding resolution of their individual claims and business
> disputes while memories are fresh. Arbitration shall take place at the location
> (which shall be in Dallas County if the controversies, disputes, or claims involve in
> whole or in part one or more of the Company's Facilities located in Texas or a
> Company policy administered in whole or in part from the Company's headquarters
> in Texas; otherwise the location shall be within the State and County where the
> affected Company's Facility is located) and time set by JAMS, regardless of
> whether one side to the dispute or controversy fails or refuses to participate . . . .

(*Id.* at *23.)

In Texas, a party seeking to compel arbitration must establish the following: (1) an

arbitration agreement exists, and (2) the nonmovant's claims fall within the scope of that

agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). There is a strong

presumption in favor of finding a valid and enforceable agreement to arbitrate, and courts must resolve any doubts regarding the scope of the arbitration agreement in favor of arbitration. *Id.*

The first step of the inquiry—whether an arbitration agreement exists—focuses on contract formation: "the court must determine whether the parties entered into *any arbitration agreement at all.*" *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (per curiam) (internal quotation marks and citation omitted). At this first step, courts focus on "formation" or "existence" challenges, rather than "validity" or "enforceability" challenges. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018); *see also Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("we have reiterated that the first step is limited to contract formation").

Arguments relating to the existence or formation of the agreement may include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). A court may not consider challenges to the contract generally—the court may only consider "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("[W]e nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."); *see also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) (collecting cases). "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 648 (Tex. 2009) (collecting cases).

Plaintiffs argue that the SDDA is a "form document – essentially an adhesive, take-it-or-leave-it contract that Gruma requires all distributors to sign without any ability to negotiate any of

the terms therein . . . ." (ECF No. 13 at 22.) Plaintiffs contend that the agreement is "poorly drafted and difficult to understand" and that they "did not have a lawyer review the agreement nor did Gruma require as much." (*Id.*) In short, Plaintiffs argue that the SDDA is procedurally unconscionable because it is a contract of adhesion. (*Id.* at 23.) This challenge pertains to the SDDA as a whole—rather than to the arbitration agreement itself—and, as such, should be determined by the arbitrator, not by the Court.

Plaintiffs also argue, without citation, that individual Plaintiffs Charles Adler and Grant Adler are not signatories to the SDDA and therefore "not bound by the SDDA in their individual capacities." (ECF No. 13 at 21.) This challenge likewise relates to the parties' agreement as a whole, not specifically to the parties' agreement to arbitrate. Moreover, under Texas's "direct benefits" estoppel theory, non-signatories may be bound to an arbitration agreement in two ways. *Bailey v. HealthSouth Corp.*, No. 15-57, 2017 WL 664445, at *5 (E.D. Tex. Jan. 26, 2017), *report and recommendation adopted*, No. 15-57, 2017 WL 661964 (E.D. Tex. Feb. 16, 2017). First, non-signatories who uses the litigation process to sue based on a contract subject themselves to the contract's terms. *Id.* Second, non-signatories may be bound by an arbitration agreement when they "seek or obtain direct benefits from a contract by means other than the lawsuit." *Id.* (quotation marks and citation omitted). This doctrine arises when the non-signatory "seeks and obtains substantial benefits from the contract during the performance of the agreement," such as "insist[ing] that others treat it as a party to the contract during the life of the contract." *Id.* at *6.

In this case, the individual Plaintiffs have pursued claims in this Court based on the SDDA. The Complaint repeatedly asserts that Plaintiffs seek relief "on behalf of all plaintiffs." (Compl. ¶¶ 122, 132, 138, 144, 145, 151, 155, 164, 169, 174, 193.) In addition, the Complaint makes clear that the individual Plaintiffs acted as parties to the SDDA during the performance of the agreement,

stating that Plaintiffs Charles and Grant Adler worked full-time as Gruma franchisees and employees, that "each of the above-named plaintiffs was or is a 'franchisee' of Gruma," that "each of the above-named plaintiffs was or is an 'employee' of Gruma," and that "each of the above-named plaintiffs services and distributes Gruma products." (*Id.* ¶¶ 25–28.) The Court therefore finds that the individual Plaintiffs, regardless of whether they formally signed the SDDA, are bound by same. Absent further challenge to the formation of the arbitration agreement, the Court finds that an arbitration agreement exists between the parties.

Turning to the second step of the analysis, the Court will consider whether the SDDA's arbitration agreement contains a delegation clause. Under Texas law, the second step of the analysis is "limited" when an agreement contains a delegation clause: the only inquiry is whether a purported delegation clause is *in fact* a delegation clause. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016); *Maravilla*, 783 F. App'x at 395.

A delegation clause "is an agreement to arbitrate threshold issues concerning the arbitration." *Rent-A-Ctr.*, 561 U.S. at 68. Under a delegation clause, the parties agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate . . . ." *Id.* at 68–69 (quotations marks and citations omitted). Courts do not assume that a provision constitutes a delegation clause unless it "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. "[C]ourts require the party seeking to force arbitration to prove with clear and unmistakable evidence that the parties delegated the arbitrability question to an arbitrator." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (citations omitted). Parties can provide such clear and unmistakable evidence of their intent to delegate arbitrability in one of two ways: (1) by expressly incorporating rules empowering the arbitrator to decide arbitrability, or (2) by crafting a broad

arbitration clause that purports to cover all claims, disputes, and other matters relating to the agreement. *Id.* at 538. *see also Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985) ("Simply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is broad.")

When an arbitration agreement contains a delegation clause, a "motion to compel arbitration should be granted in almost all cases." *Maravilla*, 783 F. App'x at 395 (quotation marks and citation omitted). As the Fifth Circuit has explained:

> [Courts] first look to see if an agreement to arbitrate has been formed, then determine if it contains a delegation clause. If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator.

*Edwards*, 888 F.3d at 744 (citing *Kubala*, 830 F.3d at 202).

In *Maravilla*, the Fifth Circuit reviewed a District Court's grant of a motion to compel arbitration filed by the same defendant in this action, Gruma Corporation, pertaining to the same arbitration clause found in Subsection 15(i) of the SDDA used by Gruma for its independent contractor relationships. 783 F. App'x at 396. There, the Fifth Circuit determined that the SDDA's arbitration provision indeed contained a delegation clause. The Fifth Circuit quoted the language of the arbitration provision which explicitly delegates to the arbitrator: "any and all claims and causes of action arising out of or relation to this Agreement [] including, without limitation, matters relating to . . . enforceability of all or any part of this Agreement)." *Id.* Such broad and unqualified language "confirms that the delegation of arbitration was intended to apply to *all* disputes between the parties." *Id.* (quoting *Richland Equip. Co. v. Deere & Co.*, 745 F. App'x 521, 525 (5th Cir. 2018)). The panel also noted that "the adoption of specific arbitration rules—such as JAMS— shows that a party knowingly intended to arbitrate gateway issues of arbitrability." *Id.* (citing *Rent-*

*A-Ctr.*, 561 U.S. at 79 and *Cooper v. WestEnd Capital Mgmt.*, L.L.C., 832 F.3d 534, 546 (5th Cir. 2016)).

While the Court is not bound by the Fifth Circuit's opinion, the Court agrees with the panel's reasoning and finds that the SDDA's arbitration provision contains a delegation clause. The arbitration provision is broad in scope, providing that *any and all* claims arising out of or relating to the SDDA should *without limitation* be referred to an arbitrator. The provision includes expansive language that matters *regarding arbitration* should be decided by an arbitrator. (Compl. at *22 ("any and all other claims and causes of action arising out of or relating to this Agreement [] including, without limitation, matters relating to this Subsection 15(i) regarding arbitration.")). The provision further provides, in detail, the arbitration procedures the parties must follow. The Court finds that the SDDA's arbitration clause clearly and unmistakably evidences the parties' intent to have issues regarding the validity and enforceability of the arbitration agreement be decided by an arbitrator.

Having determined that the SDDA contains a delegation clause, the Court will consider the clause to be valid and compel arbitration unless Plaintiffs have challenged the delegation clause itself. *See Edwards*, 888 F.3d at 744 ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration."). Plaintiffs raise two challenges to the SDDA. First, Plaintiffs argue that the arbitration agreement is unenforceable because it does not include clear and unambiguous language that a party is waiving its statutory right to seek relief in court as required by New Jersey law. (ECF No. 13 at 8, 13.) As the Court noted above, the SDDA is governed by Texas law. Thus, Plaintiffs arguments that the agreement does not comport with New Jersey law are unpersuasive.

Second, as noted above, Plaintiffs argue that the SDDA is procedurally unconscionable because it is a contract of adhesion and substantively unconscionable because the arbitration provision provides for a right to judicial review of the arbitration award if the arbitration award exceeds $100,000. (*Id.* at 23–24.)[7] Subsection 15(i)(v) of the arbitration provision requires the following:

> In the event that the amount in controversy in arbitration exceeds $100,000, the parties shall have the right to have any arbitration award judicially reviewed by the courts of law as fully as would be allowed in the review of a decision of a master under Federal Rule of Civil Procedure 53, with findings of fact to be reviewed for clear error and issues of law to be decided de novo by the courts.

(Compl., Ex. 1 at *23.) Plaintiffs argue this provision makes it "much more costly and ineffective and time consuming and harder to bring a meaningful challenge and claim against the Defendant corporation." (*Id.* at 24.)

As explained above, Plaintiffs' argument that the SDDA is procedurally unconscionable pertains to the entire contract, not just the arbitration agreement or the delegation clause—such challenges to the contract as a whole must be determined by the arbitrator. However, even if this Court were to find that the SDDA is a contract of adhesion, Plaintiffs concede that adhesion contracts are not necessarily unenforceable, and that the party challenging the contract must also establish substantive unconscionability. (ECF No. 13 at 23.) Thus, the Court turns to Plaintiffs' argument that the SDDA is substantively unconscionable. Plaintiffs' argument focuses on the right to judicial review found in Subsection 15(i)(v) of the arbitration provision—it does not pertain to the delegation clause. As noted above, absent a challenge to the delegation clause itself, the court will consider the delegation clause valid and compel arbitration. Therefore, Plaintiffs' substantive

---

[7] Procedural unconscionability refers to the circumstances surrounding the formation of the agreement, while substantive unconscionability refers to the fairness of the agreement's terms. *Taylor Morrison of Texas, Inc. v. Skufca*, 650 S.W.3d 660, 678 (Tex. App. 2021).

unconscionability argument must be heard by the arbitrator. Even if this Court were to consider Plaintiffs' arguments regarding the right to judicial review, it is not clear to the Court why these terms are unfair to Plaintiffs.[8] Accordingly, the Court finds that the SDDA's delegation clause is enforceable and compels arbitration of Plaintiffs' claims. The Court therefore **GRANTS** Defendant's Motion to Dismiss and compels Plaintiffs to arbitrate this dispute.

---

[8] Plaintiffs also argue that they should be exempt from arbitration under the FAA because they are interstate transportation workers under the exception found in 9 U.S.C. § 1. (ECF No. 13 at 25–26.) As noted above, the parties have entered into a valid arbitration agreement which contains a delegation clause; therefore, issues pertaining to arbitrability must be decided by an arbitrator.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss and Compel Arbitration is **GRANTED**, and Plaintiffs' Complaint is hereby **DISMISSED**. An appropriate Order accompanies this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: November 13, 2023